Frederik A. Jacobsen SBN 71330
email: fredjacobsen@earthlink.net
LAW OFFICES OF FREDERIK A. JACOBSEN
P. O. Box 2003
Menlo Park, California 94026
Telephone: (415) 483-2556

Attorney for Plaintiffs
Andrew Contasti, et al.

FILED
2009 JUN 25  AM 11: 27
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

ANDREW CONTASTI, ANNETTE CONTASTI and JOE HERNANDEZ, individuals,

    Plaintiffs,

v.

CITY OF SOLANA BEACH,

    Defendant.

NO. 09 CV 1371 WQH    BLM

COMPLAINT FOR DAMAGES [42 U.S.C. § 1983]; DEMAND FOR JURY TRIAL

**Demand for Jury Trial**

1. Plaintiffs hereby demand a jury trial as provided by Rule 38(a) of the Federal

---

COMPLAINT FOR DAMAGES [42 U.S.C. §1983]          -1-

Rules of Civil Procedure and Local Rule 38.1.

## Jurisdictional Allegations

2. This action arises under a federal statute, 42 U.S.C. §1983 (Federal Civil Rights Act). This Court has jurisdiction of this action under 28 U.S.C. §1331.

## Venue

3. Plaintiffs reside in San Diego County and the City of Solana Beach is located within the Southern District of California. All acts complained of occurred within the Southern District of California. Venue is proper pursuant to 28 U.S.C. §1391.

**FIRST CLAIM FOR RELIEF**
[Federal Civil Rights - 42 U.S.C. §1983 - Due Process]

4. Plaintiffs Andrew Contasti, Annette Contasti and Joe Hernandez are residents of San Diego County. They own two adjacent lots (9 and 10), located at 360 North Granados Avenue, in the City of Solana Beach.

5. Defendant City of Solana Beach ("City") is a public entity organized and existing under the laws of the State of California, and located within the Southern District of California.

6. Petitioners purchased Lots 9 and 10 in January, 2007. At the time of purchase, the two lots were improved with an aging church (the San Dieguito Mormon Church) built in the 1940's.

7. The City regulated home building with a set of regulations, consisting of objective standards such as building heights, building setbacks, and maximum floor-to-area ratios. These regulations were made available to the public, and were intended to notify property owners which property uses were permitted and what design features were required. The regulations also provided guidance to the City decisionmakers and limited the discretion of those decisionmakers in approving permits for property development.

8. The regulations in question provided for each of plaintiffs' two lots:

• single-family residential use was a permitted use (Solana Beach Municipal Code ("SBMC") §17.20.020 - "uses in the residential zones shall be as indicated in SBMC 17.12.020 (Use Regulation Matrix) Table 17.12.020-A)).

• one single-family residence per lot (SBMC §17.20.030B(1)(b) - "no lot shall be occupied by more than one principal dwelling unit");

- minimum floor area (SBMC §17.20.030C - "each dwelling unit shall have a minimum gross floor area of 650 square feet");

- minimum yard setbacks (SBMC §17.20.030D - "minimum yard dimensions . . . shall be 25' for the front yard, 5' for the side yard(interior), 10' for the side yard (street), and 25' for the rear yard [Table 17.20.030D - Minimum Yards];

- maximum floor/area ratio (SBMC §17.20.030F - "maximum floor area ratio . . . shall be as follows: (.60 for the first 5,000 square feet of lot area. (.30) for each additional square foot of lot area between 5,000 and 20,000 square feet");

- maximum height standards (SBMC §17.20.030G - "The maximum building height . . . shall be 25 feet . . .");

- height restrictions on retaining walls (SBMC §17.20.040O).

9. Before purchasing the property, Contasti reviewed these local regulations, and spoke with representatives of the City's Planning Department concerning their application to the lots he intended to purchase. He advised City representatives of his plan to demolish the church structure and build single-family residences on each lot. Specifically, Contasti attempted to learn how large a home he could build on each lot. He was told that, given the size of his lots, he could build a home of approximately 4,000 square feet on each lot if the homes complied with the above regulations.

10. Based on this investigation, Plaintiffs formed a reasonable expectation that City regulations allowed construction of two approximately 4000 square foot homes on Lots 9 and 10.

11. Plaintiffs closed escrow after these discussions with City representatives, and purchased the two lots for $1.7 million. Plaintiffs obtained one construction loan to build both

homes. They immediately filed an application to demolish the church, and filed applications for Development Review Permits and Structure Development Permits to build a 4,031 square foot two-story dwelling on Lot 9, and a 4,387 square foot two-story dwelling on lot 10. Lots 9 and 10 are each approximately 8,400 square feet in size. The City found Plaintiffs' applications to be complete on February 24, 2007.

12. In March, 2007, the Solana Beach Historical Society sought to halt demolition of the church in the hope of obtaining a historical designation for the church building and locating it elsewhere in the City. All of the City Council members were members of the Historical Society. Instead of processing Plaintiffs' permits, the City delayed approval of Plaintiffs' applications.

13. On April 18, 2007, the City Council instructed the City Manager to mediate a meeting between the Historical Society and Contasti. This was the first notice that Andrew Contasti was given of a claim that the church building was "historical." Although Contasti asked about the status of the Church building before his purchase, City representatives never advised him of any basis upon which the Church building could be deemed "historical." In fact, the old Mormon Church satisfied none of the City's criteria for historical designation. Contasti was forced to hire an attorney to oppose the historical designation.

14. During an April 11, 2007 hearing on the historical status of the Church building, the City's Mayor and a council member stated their desire to acquire Plaintiffs' property for a community center, but noted that it was too expensive and that the City had no funds for acquisition.

15. Thereafter, the Historical Society abandoned its attempt to relocate the church building, and a Demolition Permit was approved on May 30, 2007.

16. On or about July 1, 2007, the City noticed a public hearing on the applications for Development Review Permits and Structure Development permits for each lot for July 11, 2007.

**Treatment of Lot 9 Application**

17. The July 11, 2007 staff report analyzed the proposed 4,031 square foot home for lot 9 under the standards set forth in ¶8 above, and found the proposed home:

- consistent with the minimum lot size (§17.20.20.020 of the City's Municipal Code);

- consistent with the density requirement (§17.20.030B);

- consistent with minimum floor area (§17.20.030C);

- consistent with minimum yard setbacks (§17,20,030D);

- consistent with maximum Floor area ratio applicable to the LMRd Zone governing lot 9 at the time the project was deemed complete (February 24, 2007);

- consistent with maximum height standards (§17.20.030G);

- compliant with height restrictions on retaining walls (§17.20.040);

- consistent with permitted uses and structures (§17.20.020).

***18. Staff recommended approval of the Lot 9 application.***

19. At the July 11, 2007 hearing, the Mayor and City Council requested Contasti to reduce the square footage of the home proposed for Lot 9 by 230 square feet. Contasti agreed at the hearing to this reduction.

20. After the July 11 hearing, Contasti submitted revised drawings for Lot 9, reducing the square footage for the proposed Lot 9 home by 256 square feet (instead of the Council-recommended 230 square feet). The permits for Lot 9, based on these revised drawings, were approved by the City.

**Treatment of Lot 10 Application**

21. A separate July 11, 2007 staff report likewise analyzed the proposed structure for lot 10 under the same standards as for lot 9, and found the application:

- consistent with the minimum lot size (SBMC §17.20.20.020);
- consistent with the density requirement (§17.20.030B);
- consistent with minimum floor area (§17.20.030C);
- consistent with minimum yard setbacks (§17,20,030D);
- consistent with maximum Floor area ratio applicable to the LMRd Zone governing lot 10 at the time the project was deemed complete;
- complied with maximum height standards (§17.20.030G);
- compliant with height restrictions on retaining walls (§17.20.040);
- consistent with permitted uses and structures (§17.20.020).

22. ***Staff recommended approval of the Lot 10 application.***

23. At the same July 11 hearing, the City Council, notwithstanding the compliance of the proposed Lot 10 home with all City regulations, indicated that it wanted the square footage of the proposed home reduced. However, the Council did not allow Contasti to agree at the hearing to a reduction of the square footage for Lot 10 as it had for Lot 9. Nor did the City Council give Contasti any guidance about the amount of square footage it wanted reduced. Instead, the City Council advised Contasti to "take his best shot" in submitting a reduced square-footage home. Contasti agreed to a continuance of the hearing to August 22, 2007.

24. Before the scheduled August 22 hearing, Contasti caused his project designer to redesign the Lot 10 home by reducing the square footage by 258.25 square feet. Revised drawings reflecting this reduced square footage were submitted to the City.

25. The August 22 hearing was continued to September 19, 2007.

26. At the September 19, 2007 hearing, the City denied plaintiffs' proposed home on Lot 10.

**The City Resolution Approving the Lot 9 Home.**

27. The City's July 11, 2007 Resolution 2007-108 supporting its approval of the home on Lot 9 made the following findings:

"The development complies with the following development criteria as set forth in Solana Beach Municipal Code Section 17.68.040F:

a. <u>Relationship with Adjacent Land Uses</u> – The proposed single-family residence is designed in a manner that is compatible with other nearby development because the proposed use is the same as other nearby development and will have the same or similar operational effects as the other nearby single-family residences. The proposed development complies with the setback, height, and floor area ratio requirements established by the LMRd Zone and would be compatible with existing and potential future development designed to be consistent with the same development regulations. No adverse effects upon neighboring properties have been identified from this development. The surrounding areas are protected from potential adverse effects by the fact that the adjacent parcel to the south is being developed by the same applicant, public streets are adjacent to both the west and the north of the parcel and both required yard setbacks and a vertical elevation difference with the residence to the east provides an adequate buffer. These same factors provide protection of the property from adverse surrounding influences such as negative impacts to light, air and noise. [The same square footage comparison with surrounding properties as was done with

lot 10 is then set forth, noting that the residence proposed for lot 10 is 228.5 square feet greater than would be allowed under the later-adopted Ordinance 357]

b. <u>Building and Structure Placement</u> – The site layout and design of the proposed project, as conditioned, visually and functionally enhances its intended use as a single-family residence because the traditional architectural design of the structure is compatible with nearby structures, provides adequate setback distances from adjacent development to accommodate landscape screening and is consistent with the design and orientation of developments within the LMRd Zone. The proposed development meets applicable development regulations such as setbacks, height and floor area ratio."

**The City Resolution Denying the Lot 10 Home.**

28. The City's Resolution 2007-125 supporting the denial of the home on Lot 10 contrasts with its Resolution approving development of the twin Lot 9:

• "<u>Relationship with Adjacent Land Uses</u> – The proposed single-family residence is designed in a manner that is incompatible with other nearby residences because it is not compatible with existing or potential future single family development."

This ground for denial is both tautological and arbitrary because there is no reason given for alleged incompatibility with "nearby residences".

The denial proceeds to assert that "Adverse effects upon neighboring properties have been identified from this development." No such adverse effects are identified, other than square footage comparisons with surrounding fifty-year-old properties. The council concluded by finding that the proposed residence "is approximately 387 square feet larger than the maximum size of **future** residences in the area analyzed." The alleged incompatibility of a

single-family residence in a single-family zoning district that complies with then-applicable maximum square footage limits is an arbitrary and unreasonable conclusion. The reference to "maximum size of future residences" apparently refers to Ordinance No. 357. As the planning staff noted: "The proposed project is not subject to Ordinance No. 357 **because it [the project application] was deemed complete prior to the ordinance effective date of March 24, 2007 (project deemed complete as of February 24, 2007)**." To the extent that the City sought to impose a later-adopted ordinance to plaintiffs' application, the City acted arbitrarily and unreasonably.

    • "<u>Building and Structure Placement</u> – The site layout and design of the proposed project do not visually and functionally enhance its intended use as a single-family residence because the bulk and scale of the proposed project is incompatible with nearby structures." There is no definition of "bulk" and "scale" in the municipal ordinance, nor are those terms mentioned in the staff analysis of Lot 10. To the extent that "bulk and scale" are not defined by maximum allowable floor area, height maximums, and square footage maximums contained in the ordinance (all of which the plaintiffs' application satisfied), then those findings are arbitrarily vague and subjective and unreasonable.

    29. Plaintiffs' proposed home for Lot 10 conformed to **all** objective, non-arbitrary, and reasonable City regulation. As the planning staff concluded: *All requirements have been met for the approval of the Structure Development Permit.* The staff report went on:

> "The proposed project, as conditioned, is consistent with all applicable requirements of the SBMC Title 17 (Zoning Ordinance, such as Permitted Uses and Structures (SBMC Section 17.20,020. Further, **the proposed project adheres to**

**all property development regulations established for the**

**LMRd Zone and cited by SBMC Section 17.20.030."**

30. Plaintiffs' proposed home for (single-family residence) Lot 10 was compatible with the basic use authorized within their particular zoning and did not endanger the public health or safety or the general welfare of the area affected or the community as a whole.

31. The City's denial of lot 10 was done under color of state law, and proximately caused damage to plaintiffs, including but not limited to:

• lost profits on the development of the homes for Lots 9 and 10, which were to be developed jointly and jointly financed;

• carrying costs in an amount not yet determined;

• emotional distress to plaintiffs Andrew and Annette Contasti.

## SECOND CLAIM FOR RELIEF
### [Federal Civil Rights - 42 U.S.C. §1983 - Equal Protection]

32. Plaintiffs hereby incorporate paragraphs 1 through 31 by reference as though fully set forth herein.

33. The proposed homes on Lots 9 and 10 were identical in all material ways, and the City's approval of one (Lot 9) and denial of the other (Lot 10) was discriminatory. There was no rational basis for this disparate treatment.

34. In addition, the City's approval of new homes in the immediate vicinity of plaintiffs' property demonstrated the discriminatory treatment of the City's denial of the Lot 10 proposed home. These approvals included, but are not limited to, the approval of homes located at 140 South Granados (4,209 square feet), 142 South Granados (4,209 square feet), and 146 South Granados (4,263 square feet). These homes were approved in 2006, and were identical in all material ways to plaintiffs' proposed Lot 10 home.

35. The City's discriminatory treatment of plaintiffs by denying their proposed Lot 10 home while approving like homes without a rational basis deprived plaintiffs of their right to equal protection under the Fourteenth Amendment to the United States Constitution, thereby violating the Federal Civil Rights Act (42 U.S.C. §1983).

36. The City's discriminatory treatment was done under color of state law, and proximately caused damage to plaintiffs, including but not limited to:

• lost profits on the development of the homes for Lots 9 and 10, which were to be developed jointly and jointly financed;

• carrying costs in an amount not yet determined;

• emotional distress to plaintiffs Andrew and Annette Contasti..

## PRAYER

WHEREFORE, Petitioners/Plaintiffs pray for judgment against defendant City as follows:

1. For consequential damages according to proof.

2. For costs of suit arising from the prosecution of this action.

3. For reasonable attorneys' fees, expert fees and other reasonable expenses of litigation.

4. For such other, further and additional relief, alternatively and cumulatively, as the Court may deem appropriate in this action.

Dated: June 25, 2009                LAW OFFICE OF FREDERIK A. JACOBSEN

                                    By: _____
                                        Frederik A. Jacobsen
                                        Attorney for Plaintiffs

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
ANDREW CONTASTI, ANNETTE CONTASTI, and JOE HERNANDEZ

(b) County of Residence of First Listed Plaintiff  **SAN DIEGO**
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) Attorney's (Firm Name, Address, and Telephone Number)
FREDERIK A. JACOBSEN (SB # 71330); P.O. Box 2003, Menlo Park, CA 94026 (650) 483-2556

## DEFENDANTS
CITY OF SOLANA BEACH

County of Residence of First Listed Defendant **SAN DIEGO**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)
**'09 CV 1371 WQH BLM**

FILED 09 JUN 25 AM 11:25 CLERK US DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA BY ___ DEPUTY

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | PROPERTY RIGHTS | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | PERSONAL PROPERTY | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | LABOR | SOCIAL SECURITY | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus: | ☐ 791 Empl. Ret. Inc. Security Act | FEDERAL TAX SUITS | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | IMMIGRATION | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | |
| | ☒ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | | | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)
☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C. Section 1983
Brief description of cause:
Arbitrary and discriminatory application of land use regulations

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____  DOCKET NUMBER _____

DATE 6/25/09
SIGNATURE OF ATTORNEY OF RECORD  /s/ Frederik A. Jacobsen

FOR OFFICE USE ONLY
RECEIPT # 2333   AMOUNT 350.—   APPLYING IFP ___   JUDGE ___   MAG. JUDGE ___
6/25/09

```
DUPLICATE

Court Name: USDC California Southern
Division: 3
Receipt Number: CAS002333
Cashier ID: sramirez
Transaction Date: 06/25/2009
Payer Name: FREDERICK JACOBSEN
------------------------------------
CIVIL FILING FEE
 For: CONTASTI V. CITY OF SOLANA BEA
 Case/Party: D-CAS-3-09-CV-001371-001
 Amount:         $350.00
------------------------------------
CHECK
 Check/Money Order Num: 175
 Amt Tendered:  $350.00
------------------------------------
Total Due:      $350.00
Total Tendered: $350.00
Change Amt:     $0.00


There will be a fee of $45.00
charged for any returned check.
```