# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| ANDREW CONTASTI, ANNETTE CONTASTI and JOE HERNANDEZ, individuals, | CASE NO. 09cv1371-WQH-BLM |
|---|---|
| Plaintiffs, | ORDER |
| vs. | |
| CITY OF SOLANA BEACH, | |
| Defendant. | |

HAYES, Judge:

The matter before the Court is the Motion to Dismiss the Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion to Dismiss"), filed by Defendant City of Solana Beach ("City"). (Doc. # 5).

**I.   Background**

On June 25, 2009, Plaintiffs initiated this action by filing the "Complaint for Damages [42 U.S.C. § 1983]" ("Complaint"). (Doc. # 1).

   **A.   Allegations of the Complaint**

Plaintiffs are the owners of two adjoining residential lots (Lots "9" and "10") located at 360 North Granados Avenue, Solana Beach. In February 2007, Plaintiffs applied for building permits (called "Development Review Permits" and "Structure Development Permits") to build a 4,031 square foot two-story dwelling on Lot 9, and a 4,387 square foot two-story dwelling on Lot 10. (Compl. ¶ 11). On July 11, 2007, the City conducted a public

hearing on Plaintiff's applications for building permits on Lot 9 and Lot 10.

### 1.     Lot 9

On July 11, 2007, the City's engineering and planning staff recommended approval of Plaintiffs' Lot 9 application. At the July 11, 2007 hearing, the City's Mayor and City Council requested Plaintiff Andrew Contasti ("Contasti") to reduce the square footage of the home proposed for Lot 9 by 230 square feet. "Contasti agreed at the hearing to this reduction." (Compl. ¶ 19). "After the July 11 hearing, Contasti submitted revised drawings for Lot 9, reducing the square footage for the proposed Lot 9 home by 256 square feet (instead of the Council-recommended 230 square feet). The permits for Lot 9, based on these revised drawings, were approved by the City." (Compl. ¶ 20). City Resolution 2007-108, "supporting the approval of the home on Lot 9," found that "'[t]he proposed single-family residence is designed in a manner that is compatible with other nearby development because the proposed use is the same as other nearby single-family residences.'" (Compl. ¶ 27).

### 2.     Lot 10

On July 11, 2007, the City's engineering and planning staff recommended approval of the Lot 10 application.

> At the same July 11 hearing, the City Council, notwithstanding the compliance of the proposed Lot 10 home with all City regulations, indicated that it wanted the square footage of the proposed home reduced. However, the Council did not allow Contasti to agree at the hearing to a reduction of the square footage for Lot 10 as it had for Lot 9. Nor did the City Council give Contasti any guidance about the amount of square footage it wanted reduced. Instead, the City Council advised Contasti to 'take his best shot' in submitting a reduced square-footage home.

(Compl. ¶ 23). After the July 11, 2007 hearing, "Contasti caused his project designer to redesign the Lot 10 home by reducing the square footage by 258.25 square feet. Revised drawings reflecting this reduced square footage were submitted to the City." (Compl. ¶ 24). At a September 19, 2007 hearing, "the City denied plaintiffs' proposed home on Lot 10." (Compl. ¶ 26).

City Resolution 2007-125, "supporting the denial of the home on Lot 10," states: "'The proposed single-family residence is designed in a manner that is incompatible with other nearby residences because it is not compatible with existing or potential future single family

development.'" (Compl. ¶ 28). "This ground for denial is both tautological and arbitrary because there is no reason given for alleged incompatibility with 'nearby residences.'" *Id.* The Resolution states that "'Adverse effects upon neighboring properties have been identified from this development.'" *Id.* "No such adverse effects are identified, other than square footage comparisons with surrounding fifty-year-old properties." *Id.*

> The council concluded by finding that the proposed residence 'is approximately 387 square feet larger than the maximum size of future residences in the area analyzed.' The alleged incompatibility of a single-family residence in a single-family zoning district that complies with then-applicable maximum square footage limits is an arbitrary and unreasonable conclusion. The reference to 'maximum size of future residences' apparently refers to Ordinance No. 357. As the planning staff noted: 'The proposed project is not subject to Ordinance No. 357 because it [the project application] was deemed complete prior to the ordinance effective date of March 24, 2007 (project deemed complete as of February 24, 2007).' To the extent that the City sought to impose a later-adopted ordinance to plaintiffs' application, the City acted arbitrarily and unreasonably.

*Id.* The Resolution also states: "'The site layout and design of the proposed project do not visually and functionally enhance its intended use as a single-family residence because the bulk and scale of the proposed project is incompatible with nearby structures.'" *Id.* "There is no definition of 'bulk' and 'scale' in the municipal ordinance, nor are those terms mentioned in the staff analysis of Lot 10. To the extent 'bulk and scale' are not defined by maximum allowable floor area, height maximums, and square footage maximums contained in the ordinance (all of which plaintiffs' application satisfied), then those findings are arbitrarily vague and subjective and unreasonable." *Id.*

The Complaint's first claim alleges that the City's denial of Plaintiffs' application for a building permit for Lot 10 constituted a deprivation of Plaintiffs' right to due process under the Fourteenth Amendment to the United States Constitution, thereby violating 42 U.S.C. § 1983.

The Complaint's second claim alleges that the City's denial of Plaintiffs' application for a building permit for Lot 10 constituted a deprivation of Plaintiffs' right to equal protection under the Fourteenth Amendment, thereby violating 42 U.S.C. § 1983. In support of the second claim, Plaintiffs allege:

> The proposed homes on Lots 9 and 10 were identical in all material ways, and

> the City's approval of one (Lot 9) and denial of the other (Lot 10) was discriminatory. There was no rational basis for this treatment.... In addition, the City's approval of new homes in the immediate vicinity of plaintiffs' property demonstrated the discriminatory treatment of the City's denial of the Lot 10 proposed home. These approvals included ... the approval of homes located at 140 South Granados (4,209 square feet), 142 South Granados (4,209 square feet), and 146 South Granados (4,263 square feet). These homes were approved in 2006, and were identical in all material ways to plaintiffs' proposed Lot 10 home.

(Compl. ¶ 33-34).

Plaintiffs seek consequential damages, attorneys' fees and costs.

### B. State Court Litigation

After the City denied the Lot 10 permit application on September 19, 2007, Plaintiffs filed a Petition for Writ of Mandate and Complaint for Damages against the City in San Diego Superior Court on October 29, 2007. (Def.'s Request for Judicial Notice, Ex. A, Doc. # 5-3).[1] Plaintiffs' claims related to the City's September 19, 2007 denial of the Lot 10 permit application. On February 15, 2008, Plaintiffs filed an amended petition and complaint alleging causes of action for (1) writ of mandate, (2) inverse condemnation, (3) due process, and (4) equal protection. (Def.'s Request for Judicial Notice, Ex. B, Doc. # 5-3).

The City filed a demurrer as to each of Plaintiffs' four causes of action in the amended petition and complaint. On August 15, 2008, the state court overruled the City's demurrer as to the first three causes of action, but sustained the demurrer as to Plaintiffs' equal protection claim. The state court stated: "The court finds that the Plaintiffs have failed to allege a required element of [an equal protection] cause of action: that Plaintiffs have been treated differently than other people in similar situations. Plaintiffs are granted 20 days leave to amend to allow them to state a cause of action including this element." (Def.'s Request for Judicial Notice, Ex. C at 1, Doc. # 5-3).

On September 3, 2008, Plaintiffs filed a Second Amended Complaint alleging two causes of action: due process and inverse condemnation. (Def.'s Request for Judicial Notice, Ex. D, Doc. # 5-3).

---

[1] The Court takes judicial notice of the filings in the State Court Action. *See Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998).

On April 3, 2009, Plaintiffs filed a request for dismissal of the state court action without prejudice. (Def.'s Request for Judicial Notice, Ex. E, Doc. # 5-3). On June 9, 2009, the state court entered a judgment of dismissal pursuant to Plaintiffs' request. (Def.'s Request for Judicial Notice, Ex. F, Doc. # 5-3). Plaintiffs initiated their action in this Court on June 25, 2009. (Doc. # 1). On July 10, 2009, the state court judgment of dismissal was amended to include an award of costs to the City in the amount of $8,276.02. (Def.'s Request for Judicial Notice, Ex. G, Doc. # 5-3).

### C. Motion to Dismiss

On July 20, 2009, the City filed the Motion to Dismiss. (Doc. # 5). With respect to Plaintiffs' due process claim, the City contends that the "claim is not ripe because plaintiffs[] have not alleged sufficient facts to show they exhausted their remedies under state law," and the Plaintiffs do not have standing because "plaintiffs[] have failed to allege sufficient facts to show they were deprived of a protected property interest or that the City acted arbitrarily or capriciously." (Doc. # 5-1 at 5). The City contends that "Plaintiffs' equal protection claim has already been adjudicated in state court because plaintiffs failed to amend their Complaint to include the equal protection claim after the state court sustained the demurrer with leave to amend. In addition, the equal protection claim is not ripe." (Doc. # 5-1 at 10).

On August 14, 2009, Plaintiffs filed an opposition to the Motion to Dismiss. Plaintiffs contend that "[t]he City improperly conflates ripeness standards for takings cases and due process/equal protection cases. This action does not plead a taking, and is ripe for adjudication under the ripeness standards governing the due process and equal protection claims that are pled." (Doc. # 6 at 3). Plaintiffs contend that they have standing to pursue their claims, and their equal protection claim is not barred "because the state court ruling held only that plaintiffs had failed to plead an element of their equal protection claim, a technical failure that they have now cured in this federal complaint." (Doc. # 6 at 14).

On August 24, 2009, the City filed a reply brief in support of the Motion to Dismiss. (Doc. # 7).

//

## II.   Discussion

### A.   Standard of Review

"Whether a claim is ripe for adjudication goes to a court's subject matter jurisdiction under the case or controversy clause of article III of the federal Constitution." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989) (citation omitted). "Like other challenges to a court's subject matter jurisdiction, motions raising the ripeness issue are treated as brought under Rule 12(b)(1) even if improperly identified by the moving party as brought under Rule 12(b)(6)." *Id.* (citation omitted).

"When subject matter jurisdiction is challenged under Federal Rule of Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Tosco Corp. v. Communities for Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001). Upon a motion to dismiss pursuant to Rule 12(b)(1), a party may make a jurisdictional attack that is either facial or factual. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack occurs when the movant "asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* A factual attack occurs when the movant "disputes the truth of the allegations, that by themselves, would otherwise invoke federal jurisdiction." *Id.*

In the Motion to Dismiss, the City does not dispute the truth of the allegations. The City contends that Plaintiffs' claims are not ripe because "plaintiffs do not, and cannot, allege the denial of the development review permit was a final decision." (Doc. # 5-1 at 7).

### B.   Ripeness

"In the area of land use, the doctrine of ripeness is intended to avoid premature adjudication or review of administrative action. A constitutional challenge to land use regulations is ripe when the developer has received the planning commission's 'final definitive position regarding how it will apply the regulations at issue to the particular land in question.'" *Herrington v. County of Sonoma*, 857 F.2d 567, 568-69 (9th Cir. 1988) (quoting *Williamson Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 191 (1985)). In the context of due process and equal protection claims, courts "require a final decision by the government which inflicts

a concrete harm upon the plaintiff landowner."[2]  *Herrington*, 857 F.2d at 569.  "A final decision requires at least: '(1) a rejected development plan, and (2) a denial of a variance.'" *Id.* (quoting *Kinzli v. City of Santa Cruz*, 818 F.2d 1449, 1454 (9th Cir. 1987)); *see also Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227, 1232 (9th Cir. 1994) ("Typically, before a decision is final the landowner must have submitted one formal development plan and sought a variance from any regulations barring development in the proposed plan that have been denied.").  "A landowner may avoid the final decision requirement if attempts to comply with that requirement would be futile." *Herrington*, 857 F.2d at 569 (citation omitted).  Under this "futility exception," the plaintiff has a "heavy burden of showing that compliance with local ordinances would be futile." *Am. Sav. & Loan Ass'n v. County of Marin*, 653 F.2d 364, 371 (9th Cir. 1981).

The Complaint in this case alleges that the City passed a resolution denying Plaintiffs' application for a building permit for Lot 10.  (Doc. # 1 ¶¶ 26, 28).  The Court concludes that this allegation satisfies the requirement of "a rejected development plan." *Herrington*, 857 F.2d at 569.  However, the Complaint does not allege–and Plaintiffs have not asserted–that Plaintiffs were (a) denied a variance, or (b) attempts to comply with the variance requirement would be futile, or (c) "pursuit of a variance was not a legally viable option." *Id.* at 569-70 ("[T]he second *Kinzli* factor–application for a variance–need not be met in this case because pursuit of a variance was not a legally viable option."); *see also Kawaoka*, 17 F.3d at 1232 n.4 (same); *Traweek v. City and County of San Francisco*, 920 F.2d 589, 594 (9th Cir. 1990) ("Appellants have not applied for a variance.  Although appellants need not apply for a variance if such application does not constitute a legally viable option, appellants have not indicated any facts which satisfy their heavy burden of establishing the futility exception.") (citation omitted).  For this reason, the Complaint must be dismissed for lack of subject-matter jurisdiction.

---

[2] Because Plaintiffs do not assert a takings claim, they need not have "obtain[ed] a decision as to the feasibility of a *less intensive development*" in order for their claims to ripen. *Herrington v. County of Sonoma*, 834 F.2d 1488, 1497 (9th Cir. 1987).  Similarly, Plaintiffs are not required to show that they exhausted state procedures for obtaining compensation. *See Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 882 F.2d 1398, 1407 (9th Cir. 1989).

### III.  Conclusion

IT IS HEREBY ORDERED that the Complaint is **DISMISSED** for lack of subject-matter jurisdiction.  No later than **thirty (30) days** from the date of this Order, Plaintiffs may file a motion for leave to amend the Complaint, accompanied by a proposed amended complaint.  If Plaintiffs do not file a motion for leave to amend within thirty days, the Court will order this case to be closed.

DATED:  November 10, 2009

*William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge