1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW CONTASTI; ANNETTE CONTASTI; and JOE HERNANDEZ,<br><br>                              Plaintiffs,<br><br>        vs.<br><br>CITY OF SOLANA BEACH,<br><br>                              Defendant. | CASE NO. 09cv1371 WQH (BLM)<br><br>**ORDER** |

HAYES, Judge:

The matter before the Court is Defendant's Motion to Dismiss the First Amended Complaint.  (Doc. # 17).

## BACKGROUND

On June 25, 2009, Plaintiffs Andrew Contasti, Annette Contasti, and Joe Hernandez initiated this action by filing their Complaint.  (Doc. # 1).  On November 11, 2009, the Court dismissed the Complaint for lack of subject matter jurisdiction.  (Doc. # 9).  The Court allowed Plaintiffs to file a motion for leave to amend within thirty days of the date of the order.  Id. On January 20, 2010, the Court granted Plaintiffs' Motion to Amend.  (Doc. # 14).  On January 28, 2010, Plaintiffs filed their First Amended Complaint ("FAC"), which is the operative complaint.  (Doc. # 15).  On February 12, 2010, Defendant City of Solana Beach filed its

1  Motion to Dismiss the First Amended Complaint.  (Doc. # 17).  On July 1, 2010, the Court

2  held oral argument on the motion.  *See* Doc. # 22.

3  **ALLEGATIONS OF THE FIRST AMENDED COMPLAINT**

4  Plaintiffs are the owners of two adjacent lots, Lots 9 and 10, located in the City of

5  Solana Beach at 360 North Granados Avenue.  (Doc. # 15 at ¶ 4).  Plaintiffs applied for

6  building permits to build homes on each lot and received notice that the applications were

7  complete on February 24, 2007.  *Id.* at ¶ 12.  The home designed for Lot 9 was 4,031 square

8  feet and the home designed for Lot 10 was 4,387 square feet.  *Id.*  At a hearing on July 11,

9  2007, the City Council requested that Plaintiffs reduce the size of the home planned for Lot 9

10  by 230 square feet.  *Id.* at ¶¶ 20.  Plaintiffs agreed to the reduction and submitted revised

11  drawings after the hearing, which were approved by the city.  *Id.*  At the same hearing, the City

12  Council denied the permit for Lot 10.  *Id.* at ¶ 23.  Although the home proposed for Lot 10

13  complied with the square footage limitations, the City Council told Plaintiffs that it wanted the

14  size of the home reduced, but did not allow Plaintiffs to agree to the reduction at the hearing.

15  *Id.*  The City Council did not tell Plaintiffs how much the home should be reduced by, instead

16  telling Andrew Contasti to "take his best shot" at submitting a reduced square footage home.

17  *Id.*  Although Plaintiffs requested a variance for Lot 10 similar to the variance granted for Lot

18  9, the City Council refused the request.  *Id.* at ¶ 33.  After the hearing, Plaintiffs submitted

19  revised drawings which reduced the size of the home by 258.25 square feet and changed the

20  exterior of the home "from a Tuscan Villa look to a Craftsman home style."  *Id.* at ¶¶ 24, 35.

21  The director of community development, who could grant or deny variances, declined to rule

22  on the revised application and instead recommended that the City Council make the decision.

23  *Id.* at ¶ 36.  At a hearing on September 19, 2007, the City denied Plaintiff's proposed home on

24  Lot 10.  *Id.* at ¶¶ 25-26.[1]

25  City Resolution 2007-125, "supporting the denial of the home on Lot 10," states: "'The

26  proposed single-family residence is designed in a manner that is incompatible with other

27

28  _____

[1] Plaintiff's FAC does not specify whether the City denied a permit for the the original larger "Tuscan Villa" home or the smaller Craftsman style home.  *See id.* at ¶ 26.

nearby residences because it is not compatible with existing or potential future single family development.'" *Id.* at ¶ 28. "This ground for denial is both tautological and arbitrary because there is no reason given for alleged incompatibility with 'nearby residences.'" *Id.* The Resolution states that "'Adverse effects upon neighboring properties have been identified from this development.'" *Id.* "No such adverse effects are identified, other than square footage comparisons with surrounding fifty-year-old properties." *Id.*

> The council concluded by finding that the proposed residence 'is approximately 387 square feet larger than the maximum size of future residences in the area analyzed.' The alleged incompatibility of a single-family residence in a single-family zoning district that complies with then-applicable maximum square footage limits is an arbitrary and unreasonable conclusion. The reference to 'maximum size of future residences' apparently refers to Ordinance No. 357. As the planning staff noted: 'The proposed project is not subject to Ordinance No. 357 because it [the project application] was deemed complete prior to the ordinance effective date of March 24, 2007 (project deemed complete as of February 24, 2007).' To the extent that the City sought to impose a later-adopted ordinance to plaintiffs' application, the City acted arbitrarily and unreasonably.

*Id.* The Resolution also states: "'The site layout and design of the proposed project do not visually and functionally enhance its intended use as a single-family residence because the bulk and scale of the proposed project is incompatible with nearby structures.'" *Id.* "There is no definition of 'bulk' and 'scale' in the municipal ordinance, nor are those terms mentioned in the staff analysis of Lot 10. To the extent 'bulk and scale' are not defined by maximum allowable floor area, height maximums, and square footage maximums contained in the ordinance (all of which plaintiffs' application satisfied), then those findings are arbitrarily vague and subjective and unreasonable." *Id.*

After this resolution, Plaintiffs did not further pursue a variance because "the Council's finding of 'adverse impacts upon neighboring properties' legally foreclosed the requisite finding to support [the granting] of a variance that [Plaintiffs' proposed design] 'not be detrimental' to the 'properties . . . in the vicinity.'" *Id.* at ¶ 39. Additionally, because Plaintiff's original plans complied with all applicable city zoning regulations, "[f]urther pursuit of a variance would have been futile because . . . variances are typically granted for departures from objective development standards . . . . [and] there was no departure from objective development standards in [Plaintiff's] proposal from which to seek a variance." *Id.* at ¶ 40.

The FAC's first claim for relief alleges the City's denial of Plaintiffs' application for a building permit for Lot 10 was arbitrary and unreasonable, constituting a deprivation of Plaintiffs' right to due process under the Fourteenth Amendment of the United States Constitution, thereby violating 42 U.S.C. § 1983.

The FAC's second claim for relief alleges that the City's denial of Plaintiffs' application for a building permit for Lot 10 constituted a deprivation of Plaintiffs' right to equal protection under the Fourteenth Amendment of the United States Constitution, thereby violating 42 U.S.C. § 1983.  In support of this claim, Plaintiffs allege:

> The proposed homes on Lots 9 and 10 were identical in all material ways, and the City's approval of one (Lot 9) and denial of the other (Lot 10) was discriminatory.  There was no rational basis for this treatment. . . .  In addition, the City's approval of new homes in the immediate vicinity of plaintiffs' property demonstrated the discriminatory treatment of the City's denial of the Lot 10 proposed home.  These approvals included . . . the approval of homes located at 140 South Granados (4,209 square feet), 142 South Granados (4,209 square feet), and 146 South Granados (4,263 square feet).  These homes were approved in 2006, and were identical in all material ways to plaintiffs' proposed Lot 10 home.

*Id.* at ¶ 42.

## ANALYSIS

## I.    Due Process Claim

Defendant contends that Plaintiffs' due process claim is not ripe because they never requested a variance for Lot 10, but instead "refused to bring forward a reduced-size project" and "stuck with their original design." (Doc. # 17-1 at 10).  Defendant contends that Plaintiffs cannot allege they were denied a variance because they never applied for one.  *Id.* at 11. Defendant contends that Plaintiffs have not asserted that it would have been futile to apply for a variance and cannot do so because a variance was granted on Lot 9.  *Id.*  Defendant contends that Plaintiffs have conceded that applying for a variance was a legally viable option.  *Id.* Defendant contends that Plaintiffs' claims are not ripe because they have not obtained a final determination from the agency which enforces a zoning regulation and exhausted state-provided remedies.  *Id.* at 12.  Defendant contends that Plaintiffs do not have a final decision because they did not apply for a variance or submit less intensive development plans to the

city.  *Id.* at 13.  Defendant contends that Plaintiffs failed to exhaust state-provided remedies because they voluntarily dismissed the action they filed in the state court in order to file this action.  *Id.* at 14-15.  Defendant contends that Plaintiffs lack standing to pursue their due process claim because the city had discretion to deny Plaintiffs' application for a permit.  *Id.* at 16-17.

Defendant seeks judicial notice pursuant to Federal Rule of Evidence 201 of Solana Beach Resolution No. 2007-108, which granted the application for a building permit for the house proposed for Lot 9 on the condition that Plaintiffs submit revised plans reducing the square footage by a minimum of 230 square feet, Solana Beach Resolution 2007-125, which denied the application for a building permit for the house proposed for Lot 10, and Solana Beach Municipal Code Section 17.68.040 which covers development review permits.  (Doc. # 17-2 at 1-2).

Plaintiffs contend that the city denied a variance at the July 11, 2007 hearing.  (Doc. # 18 at 9).  Plaintiffs contend that the city's instruction that Andrew Contasti "take his best shot" at submitting a plan with a reduced square footage shows that further attempts at seeking a variance would be futile.  *Id.* at 9-10.  Plaintiffs contend that under California law, a variance is a means of obtaining permission for a use or activity which would not otherwise be permitted on a property.  *Id.*   Plaintiffs contend that they could not apply for a variance because their original plans complied with all applicable zoning ordinances.  *Id.* at 10. Plaintiffs contend that the City has conceded in its motion that the denial of the permit was "based upon the square footage," which establishes that the denial was arbitrary because the proposed design was smaller than the maximum allowable square footage for the size of the property.  *Id.* at 10-11.  Plaintiffs contend that the City's refusal to grant a variance at the July 11, 2007 hearing constitutes a final decision on the issue because pursuant to the ordinance, "variances do not require a separate application or a separate public hearing."  *Id.*  at 11-12. Plaintiffs contend that further pursuit of a variance was not legally viable after the City's September 19, 2007 resolution because the resolution found the proposed design would have adverse effects on neighboring properties, which bars the granting of a variance.  *Id.* at 13.

Plaintiffs contend that Defendant improperly conflates the ripeness standard for a takings claim with the standard for a due process or equal protection claim. *Id.* at 14. Plaintiffs contend they do not need to establish that they were denied a permit for a less intensive use of the land because they are not arguing that Defendant prevented them from making any economically viable use of their property, they are instead claiming Defendant arbitrarily denied a permit to which Plaintiffs were entitled. *Id.* at 17. Plaintiffs contend they did not need to exhaust state judicial remedies because such exhaustion is not required for due process or equal protection claims. *Id.* at 17-18. Plaintiffs contend that even if the city had discretion to deny their application, arbitrary denial gives rise to a due process claim. *Id.* at 20-22.

Plaintiffs also seek judicial notice of Solana Beach Resolution No. 2007-108 approving the application for Lot 9, Solana Beach Resolution 2007-125, denying the application for Lot 10. (Doc. # 19 at 1-2). In addition to those two documents which both parties requested the Court take notice of, Plaintiffs seek judicial notice of Staff Reports making recommendations to the City Council on the lots and of Solana Beach Municipal Code Section 17.68.020 which covers variances. *Id.*

"Whether a claim is ripe for adjudication goes to a court's subject matter jurisdiction under the case or controversy clause of article III of the federal Constitution." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989) (citation omitted). "Like other challenges to a court's subject matter jurisdiction, motions raising the ripeness issue are treated as brought under Rule 12(b)(1) even if improperly identified by the moving party as brought under Rule 12(b)(6)." *Id.* (citation omitted).

"When subject matter jurisdiction is challenged under Federal Rule of Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Tosco Corp. v. Communities for Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001). A 12(b)(1) motion may be either a facial attack on the sufficiency of the pleadings or a factual attack on the basis for a court's jurisdiction. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment."

1   *Safe Air v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  "The court need not presume the

2   truthfulness of the plaintiff's allegations."  *Id.* (citing *White*, 227 F.3d at 1242).  However,

3   "[j]urisdictional finding of genuinely disputed facts is inappropriate when the jurisdictional

4   issue and substantive issues are so intertwined that the question of jurisdiction is dependent on

5   the resolution of factual issues going to the merits of an action."  *Sun Valley Gasoline, Inc. v.*

6   *Ernst Enterprises, Inc.*, 711 F.2d 138, 139 (9th Cir. 1983).

7        "[T]he doctrine of ripeness is intended to avoid premature adjudication or review of

8   administrative action.  A constitutional challenge to land use regulations is ripe when the

9   developer has received the planning commission's 'final definitive position regarding how it

10  will apply the regulations at issue to the particular land in question.'"  *Herrington v. County*

11  *of Sonoma*, 857 F.2d 567, 568-69 (9th Cir. 1988)[2] (quoting *Williamson Planning Comm'n v.*

12  *Hamilton Bank*, 473 U.S. 172, 191 (1985)).  In the context of due process and equal protection

13  claims, courts "require a final decision by the government which inflicts a concrete harm upon

14  the plaintiff landowner."  *Id.*  The Ninth Circuit has described the finality requirement as

15  requiring a "final and authoritative determination [which must] expose the nature and extent

16  of permitted development."  *Kinzli v. City of Santa Cruz*, 818 F.2d 1449, 1453 (9th Cir. 1987)

17  (citation and internal quotation marks omitted).

18        "Typically, before a decision is final, the landowner must have submitted one formal

19  development plan and sought a variance from any regulations barring development in the

20  proposed plan that have been denied."  *Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227, 1231

21  (9th Cir. 1994).  However, "[a] landowner may avoid the final decision requirement if attempts

22  to comply with that requirement would be futile."  *Herrington*, 857 F.2d at 569 (citation

23  omitted).  The same final decision requirement applies to takings claims, due process claims,

24  _____

25  [2] Contrary to Defendant's assertion, *Herrington* is still good law.  Although *Herrington* was overruled *en banc* by *Armendariz v. Penman*, 75 F.3d 1311 (9th Cir. 1996), the holding

26  of *Armendariz* and its progeny that substantive due process challenges to land regulation are preempted by the takings clause was subsequently abrogated by the Supreme Court's holding

27  in *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 542 (2005) that a government's application of a land use regulation could be "so arbitrary or irrational that it runs afoul of the Due Process

28  Clause."  *See also Shanks v. Dressel*, 540 F.3d 1082, 1087 (9th Cir. 2008) ("[W]e have no difficulty concluding that the Takings Clause does not foreclose altogether a due process claim . . . .") (citation and internal quotations marks omitted).

and equal protection claims.  *See Kinzli*, 818 F.2d at 1456.

Additional requirements which apply before a takings claim is ripe do not apply to a due process claim.  Because Plaintiffs do not assert a takings claim, they need not have "obtain[ed] a decision as to the feasibility of a *less intensive development*" in order for their claims to ripen.  *Herrington,* 834 F.2d at 1497.  Similarly, Plaintiffs are not required to show that they exhausted state procedures for obtaining compensation.  *See Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 882 F.2d 1398, 1407 (9th Cir. 1989); *see also Shelter Creek Dev. Corp. v. City of Oxnard*, 838 F.2d 375, 378 (9th Cir. 1988) (distinguishing between a finality requirement, which applies to due process and equal protection claims, and an exhaustion requirement, which does not).

Pursuant to Solana Beach City Ordinance 17.68.040(F), the City Council must review development plans according to specified criteria which include examining whether the proposed development is "compatible with, and where feasible, complimentary to existing and potential development in the immediate vicinity in the project site;" "potential adverse effects" on neighboring properties; and whether the proposed buildings are "sited and designed in a manner which visually and functionally enhances their proposed use" among other factors.

Pursuant to Solana Beach City Ordinance 17.68.020(A), variances are available "to provide flexibility from the strict application of development standards where special characteristics pertaining to a property would otherwise deprive such property of privileges enjoyed by other properties in the vicinity and in the same zone."  Such variances may be granted "without a separate application or a separate public hearing" for development review permits provided required findings are made.  Solana Beach City Ordinance 17.68.020(B)(3).  Those findings must be made by the director of community development.  Solana Beach City Ordinance 17.68.020(E).  The findings include:

1. That strict or literal interpretation and enforcement of the specified regulation would result in practical difficulty or unnecessary physical hardship inconsistent with the objectives of the general plan and intent of this title.

2. That there are exceptional or extraordinary circumstances or conditions applicable to the property involved, or to the intended use of the property, that do not apply generally to other properties in the same zone.

1       3. That strict or literal interpretation and enforcement of the specified regulation would deprive the applicant of privileges enjoyed by the owners of other
2       properties in the same zone.

3       4. That the granting of the variance will not be detrimental to the public health, safety, welfare, or materially injurious to properties or improvements in the
4       vicinity.

5  *Id.*

6      The FAC alleges the City passed a resolution denying Plaintiffs' application for a

7  building permit for Lot 10.  (Doc. # 15 at ¶¶ 25-26).  The Court concludes that this allegation

8  satisfies the requirement of "a rejected development plan." *See Herrington*, 857 F.2d at 569.

9  Although a land owner "[t]ypically" must seek a variance before a decision is final, *see*

10  *Kawaoka*, 17 F.3d at 1231, the FAC alleges Plaintiffs' proposed development met all objective

11  criteria required by Defendant's "development standards."  *See* Doc. # 15 at ¶ 40.  Therefore,

12  the Court concludes the City Council's rejection of the plan constitutes a final decision.

13  Defendant's motion to dismiss Plaintiffs' due process claim is denied**.**

14  **II.**    **Equal Protection Claim**

15      Defendant contends that Plaintiffs' equal protection claim has already been adjudicated

16  by the state court because Plaintiffs failed to file an amended complaint after the state court

17  dismissed their equal protection claim with leave to amend.  (Doc. # 17-1 at 17).  Defendant

18  contends that Plaintiffs' equal protection claim is not ripe.  *Id.*  Defendant contends that

19  Plaintiffs' equal protection claim is also invalid because Plaintiffs fail to "identify which

20  regulations or special and unique standards were applied to them that were not applied to other

21  properties."  *Id.* at 19.  Defendant contends that there was a legitimate reason to deny the

22  permit because the City Council found the proposed home incompatible with surrounding

23  homes "and that the building and structure were not designed to visually enhance its use."  *Id.*

24      Defendant seeks judicial notice of the filings in the state court case, including pleadings,

25  a tentative ruling, a request for voluntary dismissal, and a judgment of dismissal.  (Doc. # 17-

26  2).

27      Plaintiffs contend that the state court dismissal was not on the merits and therefore does

28  not have a *res judicata* effect before this Court.  (Doc. # 18 at 20).  Plaintiffs contend that they

opted to correct the pleading defects identified in the state court proceeding by refiling their complaint in federal court with the additional factual allegations that the City approved plans at three neighboring properties which were identical to Plaintiffs' proposed design for Lot 10. *Id.* at 21.  Plaintiffs contend that their equal protection claim is ripe because the same standard applies to both equal protection claims and due process clause claims.  *Id.* at 22.  Plaintiffs contend their due process claim is properly alleged because they alleged that the city lacked a rational basis for denying the permit for Lot 10 while granting the permits to build identical houses on nearby lots.  *Id.* at 22-23.

The ripeness standard is the same for substantive due process claims and equal protection claims based on denial of a building permit.  *See Herrington*, 857 F.2d at 1499.  The Court concludes that Plaintiffs' equal protection claim is ripe for the reasons discussed above in addressing Plaintiffs' due process claim.  Plaintiffs' claim was not adjudicated on the merits in California state court and the dismissal in the state court proceeding does not prevent Plaintiffs from bringing their equal protection claim in this Court.[3]  *See Goddard v. Security Title Ins. & Guarantee Co.*, 14 Cal. 2d 47, 53 (1939).

Plaintiffs are not required to plead that "special or unique" standards were applied to their property that were not applied to other properties in order to state an equal protection claim.  *See Del Monte Dunes v. Monterey*, 920 F.2d 1496, 1508 (9th Cir. 1999). Defendant's contentions as to whether the decision was rational is an argument contesting the merits of Plaintiff's claim rather than the sufficiency of the pleadings.  This argument is not properly before the Court on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  Defendant's motion to dismiss Plaintiffs' equal protection claim is denied.

/ / /

---

[3] The Court takes judicial notice of the Amended Judgment of Dismissal filed in the state court proceedings which dismisses the complaint without prejudice pursuant to Plaintiffs' "request for entry of dismissal of the entire complaint . . . ."  (Doc. 17-3 at 20).  Courts may take judicial notice of the filings in a state court action pursuant to *Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998).

**CONCLUSION**

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss the First Amended Complaint (Doc. # 17) is **DENIED**.

DATED:  August 25, 2010

*William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge

- 11 -