# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW CONTASTI, an individual;<br>ANNETTE CONTASTI, an individual;<br>JOE HERNANDEZ, an individual,<br><br>　　　　　　　　　　Plaintiffs,<br>　vs.<br>CITY OF SOLANA BEACH,<br><br>　　　　　　　　　　Defendant. | CASE NO. 09cv1371 WQH (BLM)<br><br>**ORDER** |

HAYES, Judge:

　　The matter before the Court is the Motion for Summary Judgment, or in the Alternative Summary Adjudication of Issues filed by Defendant City of Solana Beach (ECF No. 32).

## PROCEDURAL FACTS

　　On October 29, 2007, in the Superior Court of California, County of San Diego, Plaintiffs Andrew Contasti and Joe Hernandez filed a petition for writ of mandate pursuant to California Code of Civil Procedure section 1085 and a complaint for damages alleging violations of the Fifth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 against the Defendant City of Solana Beach. (ECF No. 5-3 at 2-8). On February 15, 2007, Plaintiffs Andrew Contasti and Joe Hernandez filed an amended petition for writ of mandate pursuant to California Code of Civil Procedure section 1085 and a complaint for damages alleging deprivation of due process and equal protection in violation of 42 U.S.C. § 1983. *Id.* at 10-21. On August 15, 2008, the state court issued an order denying the petition for writ of mandate

and sustaining a demurrer to Plaintiffs' equal protection claim. *Id.* at 23. The court granted Plaintiffs twenty days to file an amended petition for writ of mandate or to amend the equal protection claim. *Id.* On September 3, 2008, Plaintiffs Andrew Contasti, Annette Contasti, and Joe Hernandez filed a second amended complaint in state court, which asserted claims for inverse condemnation and deprivation of substantive due process in violation of 42 U.S.C. § 1983. *Id.* at 25-34. The second amended complaint did not contain a petition for writ of mandate or a claim for violation of equal protection. *Id.* On April 3, 2009 Plaintiffs filed a Request for Dismissal Without Prejudice of their second amended complaint. *Id.* at 36. On June 9, 2006, the state court granted Plaintiffs' request for dismissal. *Id.* at 39.

On January 28, 2010, Plaintiffs filed a First Amended Complaint ("Complaint") against the City of Solana beach in this Court, asserting two claims for relief. (ECF No. 15). In the first claim for relief, Plaintiffs assert that the City Council's denial of Plaintiffs' application for a development review permit and structure development permit for one of two lots that they own was arbitrary and unreasonable, constituting a deprivation of substantive due process under the Fourteenth Amendment in violation of 42 U.S.C. § 1983. In the second claim for relief, Plaintiffs assert that they were treated differently from similarly situated persons when the City Council denied their permit, constituting a deprivation of equal protection under the Fourteenth Amendment in violation of 42 U.S.C. § 1983.

On April 29, 2011, Defendant filed a Motion for Summary Judgment or in the Alternative Summary Adjudication of Issues. (ECF No. 32). Plaintiffs filed no opposition. On July 26, 2011, the Court granted the Motion for Summary Judgment. (ECF No. 36).

On January 24, 2012, Plaintiff Andrew Contasti filed a Motion for Relief from Judgment on the grounds that Plaintiffs' attorney had fallen seriously ill and failed to inform them that a Motion for Summary Judgment had been filed by Defendant. (ECF No. 45). On February 2, 2012, Defendant filed a response to the Motion for Relief. (ECF No. 47). On May 11, 2012, Plaintiffs Annette Contasti and Joe Hernandez filed Notices of Joinder in the Motion for Relief from Judgment. (ECF Nos. 52, 54).

On July 9, 2012, the Court granted Plaintiffs' Motion for Relief from Judgment and

vacated the July 26, 2011 Order granting the Motion for Summary Judgment. (ECF No. 61).

On August 6, 2012, Plaintiffs filed a Response to the Motion for Summary Judgment. (ECF No. 64). On August 13, 2012, Defendant filed a reply. (ECF No. 70).

**FACTS**

Plaintiffs Andrew Contasti, Annette Contasti and Joe Hernandez own two adjacent lots, Lot 9 and Lot 10, located at 360 North Granados Avenue in the City of Solana Beach. Plaintiffs applied for development review permits and structure development permits to build a home on each lot. On July 11, 2007, the City Council approved Plaintiffs' permit application for the Lot 9 home, on the condition that Plaintiffs reduce the 4,031 square foot design by 230 square feet. Plaintiffs agreed to the reduction of the Lot 9 home and submitted revised drawings after the hearing which were approved by the City Council. The hearing was continued to August 22, 2007 to discuss the permit application for the Lot 10 home, which was designed to be 4,387 square feet. After the July 11, 2007 hearing, Plaintiffs submitted revised drawings which reduced the size of the Lot 10 home by 258.25 square feet. On August 22, 2007, the hearing was continued to September 19, 2007. On September 19, 2007, the City Council denied Plaintiffs' permit application for the original 4,387 square foot design of the Lot 10 home.

On October 10, 2007, the City Council issued City Resolution 2007-125, which formally denied the permit application for Lot 10. The Resolution states: "The proposed single-family residence is designed in a manner that is incompatible with other nearby residences because it is not compatible with existing or potential future single family development. Adverse effects upon neighboring properties have been identified from this development...." The Resolution also states: "The site layout and design of the proposed project do not visually and functionally enhance its intended use as a single-family residence because the bulk and scale of the proposed project is incompatible with nearby structures."

Plaintiffs submit the declaration of Plaintiff Andrew Contasti, who states:

> In March 2007, the Solana Beach Civic and Historical Society sought to halt demolition of the church building located on Lots 9 and 10 in the hope of obtaining a historical designation for the church building. ...

> At the April 11, 2007 meeting, I learned that the Mayor and all of the other members of the City Council were, in fact, members of the Historical Society. I also learned that two of the five City Council members at the time lived in the same area in which my property was located. Indeed, Councilmember Mike Nichols recused himself from the discussion because he lived across the street and within 500 feet of Lots 9 and 10. Furthermore, then-mayor, Lesa Heebner, stated at the hearing that she "lived very close to this area" and that she was "very interested in saving this building" because she "love[d] this building."
>
> Also at the April 11, 2007 meeting, the Mayor and Councilmember David Roberts admitted that each of them had spoken with the prior City Manager about the City possible purchasing the property for a community center, but were advised by the City Manager that the previous price (of $1.4 million) was too expensive and that there was not enough "in the City coffers" to purchase the property. ...
>
> On July 11, 2007, the Solana Beach City Council held a hearing, which I attended, in which the permit application for Lot 9 was approved (with a slight reduction of 230 feet in square footage initiated by us after the City Council began discussing Ordinance No. 357, even though it did not apply to Lot 9). The findings of this hearing are set forth in Solana Beach Resolution No. 2007-108, and were consistent with the City's Staff Report dated July 11, 2007 (Exhibit 4 to the RJN). ...
>
> Yet even though the plans for Lot 10 were developed in conjunction with the plans for Lot 9 and were in all respects fundamentally the same, and even though the city staff had recommended approval of both applications and Ordinance No. 357 did not apply to either application, the City Council refused to approve the Lot 10 application during the July 11, 2007 hearing (even though it had just approved the Lot 9 application at the same hearing).
>
> The City Council kept referencing Ordinance No. 357 and the "spirit" of the ordinance even though it did not apply to my properties. The City Council told me I had "one bite at the apple." The Mayor told me I would not be allowed to make a "back-room" adjustment to the square footage of the home proposed for Lot 10. She also threatened that I could go forward with my application but that if it was denied (as I certainly believed it would given the tenor of her remarks), I would have to "go to the back of the line" and reapply (and thus be subject to the provisions of Ordinance No. 357, even though my original application was exempt from the Ordinance). And while I understood the City Council to be asking for a reduction in square footage for Lot 10 like that which we had voluntarily given for Lot 9 ..., this time it refused to give any guidance about the amount of square footage it wanted reduced. Instead, the City Council told me to "take your best shot" at changing the plans. As with the other City Council meetings, I was only given three minutes to speak to address the Council's concerns. ...
>
> At the September 19, 2007 hearing, the City then denied the Lot 10 home application, finding that the residence was now "incompatible with other nearby development" and that "adverse effects upon neighboring properties have been identified from this development." ...
>
> I investigated whether the City had approved any other new homes in the immediate vicinity of Lots 9 and 10 and found approvals for homes located at 140 South Granados (4,209 square feet), 142 South Granados (4,209 square feet), and 146 South Granados (4,263 square feet). These homes were approved

in 2006, the year before our applications, and were identical in all material ways to the proposed Lot 10 home.

(ECF No. 69-3 at 3-5).

## DISCUSSION

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. If the moving party satisfies its initial burden, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). "Regardless of whether . . . [the nonmoving party] responded at all[] to [a] motion for summary judgment," a court may not grant summary judgment unless the moving party "affirmatively showed" that it is entitled to judgment as a matter of law. *Martinez v. Stanford*, 323 F.3d 1178, 1182 (9th Cir. 2003). In ruling on a motion for summary judgment, the Court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**I.    Claim One - Deprivation of Substantive Due Process under the Fourteenth Amendment in Violation of 42 U.S.C. § 1983**

Defendant asserts that "California Code of Civil Procedure section 1094.5[1] is the proper

---

[1]California Code of Civil Procedure section 1094.5 provides: "Where the writ is issued for the purpose of inquiring into the validity of any final administrative order or decision made as the result of a proceeding in which by law a hearing is required to be given, evidence is

1  vehicle for challenging a discretionary decision by the legislative body of a municipality (i.e., a city council)." (ECF No. 32-1 at 9). Defendant asserts that "the necessity of appealing the agency's decision by a writ is a procedural requirement that cannot be skirted by clouding claims in constitutional terms." (ECF No. 70 at 2). Defendant contends that "because [P]laintiffs failed to file a writ of mandate under California Code of Civil Procedure [section] 1094.5, their federal Civil Rights complaint is barred as a matter of law." (ECF No. 32-1 at 9).

Plaintiffs assert that "the requirement of judicial exhaustion is not applicable in a § 1983 claim *brought in federal court*." (ECF No. 69 at 12) (emphasis in original). Plaintiffs assert that "the applicable standard articulated by the controlling federal authorities on this issue ... state[s] that to have preclusive effect in federal court, the findings of administrative agencies must satisfy both the State requirements for preclusion and the "fairness requirements" set forth in *United States v. Utah Construction & Mining Co.*" *Id.* at 11 (emphasis in original). Plaintiffs contend that under California preclusion law they are not precluded from bringing a substantive due process claim "because Plaintiffs' § 1983 claim for violation of their right to Substantive Due Process is different from Plaintiffs' application for a permit which was denied by the City Council in the underlying administrative proceeding." *Id.* at 13.

**A.     Plaintiffs' Failure to Exhaust State Remedies**

In California state court, where a party fails to challenge an administrative agency's decision by pursuing a writ of mandate under California Code of Civil Procedure section 1094.5, the administrative agency's decision becomes final. *See Johnson v. City of Loma Linda*, 24 Cal. 4th 61, 70 (Cal. 2000) ("Exhaustion of judicial remedies ... is necessary to avoid giving binding 'effect to the administrative agency's decision, because that decision has achieved finality due to the aggrieved party's failure to pursue the exclusive judicial remedy for reviewing administrative action'"). However, "exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983 [in federal

---

required to be taken, and discretion in the determination of facts is vested in the inferior tribunal, corporation, board, or officer, the case shall be heard by the court sitting without a jury." Cal. Code Civ. P. § 1094.5(a).

court]." *Patsy v. Board of Regents of State of Fla.*, 457 U.S. 496, 516 (1982) ("Based on the legislative histories of both § 1983 and § 1997e ... [w]e decline to overturn our prior to overturn our prior decisions holding that such exhaustion is not required"); *see also Embury v. King*, 191 F. Supp. 2d 1071, 1082 (N.D. Cal. 2001) *affirmed* 361 F.3d 562 (9th Cir. 2004) (holding that "[t]he *Loma Linda* requirement of judicial exhaustion ..." is procedural in nature and is therefore "inapplicable in a § 1983 action brought in federal court").

In this case, Plaintiffs did not pursue a writ of mandate under California Code of Civil Procedure section 1094.5 in their second amended complaint in state court. However, the Court concludes that Plaintiffs' failure to exhaust their state court remedies does not bar them from bringing this § 1983 action in federal court. *See Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 104 (1981) ("The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked.") (quoting *Monroe v. Pape,* 365 U.S. 167, 183 (1961)); *see also Embury*, 191 F. Supp. 2d at 1082 ("It is well established that a § 1983 plaintiff need not exhaust State remedies before bringing a federal civil rights claim.").

### B.     Preclusive Effect of the City Council's Decision

The doctrine of claim preclusion "prevents the relitigation of claims previously tried and decided. It bars the subsequent application of all defenses that could have been asserted in a previous action between the same parties on the same cause of action, even if such contentions were not raised." *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1320 (9th Cir.1992). "When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose." *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 421–22 (1966) (footnotes omitted); *see also University of Tennessee v. Elliot*, 478 U.S. 788, 794-99 (1986)*; Miller v. County of Santa Cruz*, 39 F.3d 1030, 1032 (9th Cir. 1994). In order to have preclusive effect in federal court, the findings of a state administrative agency must satisfy both the state preclusion requirements and the requirements of fairness outlined in *Utah Construction & Mining Co. See Misischia v. Pirie*,

1  60 F.3d 626, 629 (9th Cir. 1995); *see also Guild Wineries and Distilleries*, 853 F.2d at 758.
2  However, "[t]here are no special circumstances requiring [the federal Court] to look beyond
3  the state's preclusion law, because California [has] adopted the *Utah Construction* standard."
4  *See Miller*, 39 F.3d at 1033; *see also Plaine v. McCabe*, 797 F.2d 713, 719-720 n. 13 (9th Cir.
5  1986); *Palomar Mobilehome Park Ass'n v. City of San Marcos*, 989 F.2d 362, 364 (9th
6  Cir.1993). The Court of Appeals for the Ninth Circuit has noted that, in California, "unless
7  state court review of the administrative findings is sought, 'an administrative hearing
8  adjudication binds the parties on the issues litigated.'" *Miller,* 39 F.3d at 1033 (citing
9  *Swartzendruber v. City of San Diego,* 3 Cal.App.4th 896 (1992).

In this case, Plaintiffs did not pursue a writ of mandate under California Code of Civil Procedure section 1094.5, which, in California, was their "exclusive remedy" for challenging the City Council's decision. *See Briggs v. City of Rolling Hills Estates,* 40 Cal. App. 4th 637, 645 (1995) ("A proceeding under Code of Civil Procedure section 1094.5 is the exclusive remedy for judicial review of the quasi-adjudicatory administrative action of the local-level agency...."); s*ee also Plaine*, 797 F.2d at 719 n. 12; *Miller*, 39 F.3d 1030, 1032-33. The City Council hearing "binds the parties on the issues litigated" because the Plaintiffs "cannot obstruct the preclusive use of the [City Council] decision simply by foregoing [the] right to appeal." *Miller,* 39 F.3d at 1032.

### C.     Scope of the Preclusive Effect of the City Council's Decision

Plaintiffs' substantive due process claim in this action will be deemed an "issue litigated" at the City Council hearing if the claim "encompasses the same primary right that was at stake" in the City Council hearing. *Swartzendruber,* 3 Cal.App.4th at 896. In *Mycogen Corp. v. Monsanto Co.*, the court explained:

> A "cause of action" is comprised of a "primary right" of the plaintiff, a corresponding "primary duty" of the defendant, and a wrongful act by the defendant constituting a breach of that duty. The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action.

28 Cal.4th 888, 904 (Cal. 2002) (quoting *Crowley v. Katleman*, 8 Cal.4th 666, 34 Cal.Rptr.2d

386, 881 P.2d 1083, 1090 (Cal.1994)).

In *Miller,* the plaintiff unsuccessfully contested an employment dismissal before the Santa Cruz County Civil Service Commission, declined to pursue a writ of mandate under Code of Civil Procedure § 1094.5, and instead brought a § 1983 action in federal court. The court explained that "[i]t is Miller's *election* to pursue his claim initially in an administrative forum, and to forego his right to seek judicial review in state court, which requires us to determine whether that decision is binding on all that was, or could have been, determined there." The court found that the same primary right, the right to continued employment, was at stake in the Civil Service Commission action and the federal court action, and concluded that Miller was precluded from "restat[ing] his wrongful termination contentions in constitutional terms" in the federal district court. *Id.* at 1035.

In *Guru Nanek Sikh Society of Yuba v. County of Sutter*, 326 F.Supp.2d 1128 (E.D.Cal.2003), a non-profit religious organization challenged the County of Sutter's denial of its application for a permit to build a temple on a number of constitutional grounds. After the Sutter County Community Services Department issued a report recommending that the County Planning Commission grant the permit, the Commission voted unanimously to reject the permit. *Id.* The federal district court rejected the County's claim preclusion argument on the grounds that the claims presented in the federal lawsuit were "entirely different" from the claim that was presented to the administrative body. *Id.* at 1133. The district court stated:

> First, and perhaps most obviously, the doctrine of claim preclusion is inapposite because the claims in this lawsuit are entirely different from the claim, or more accurately, the application, that was denied by the Board of Supervisors. ... Those claims could not have been before the Board, of course, because it was the Board's ultimate decision to reverse the County Planning Commission, and the allegedly discriminatory nature of that decision, that gave rise to plaintiff's claims.

*Id.* Distinguishing the case from *Miller*, the district court explained that "[h]ad Miller alleged constitutional violations on the part of the county civil service commission, however, his suit would be analogous to the instant case, and the claim preclusion doctrine would have been inapplicable." *Id.* at 1134.

In this case, the City Council held three hearings to discuss Plaintiffs' application for development review and structure development permits, and its decision was announced at the third and final hearing. Unlike *Miller*, where the plaintiff appealed his termination at an administrative hearing, Plaintiffs in this case did not present their substantive due process claim before the City Council because it was the allegedly discriminatory nature of the City Council's decision that gave rise to the claim. The Court finds that the primary right presented by Plaintiffs in this action is outside the scope of the issue that was litigated during the City Council hearings. The Court concludes that the preclusive effect of the City Council's decision does not extend to the substantive due process claim presented in this federal action. *See Jensen v. City of Sonoma*, C-08-3440 JCS, 2008 WL 5048203 (N.D. Cal. Nov. 25, 2008) (finding that a state administrative decision does not have preclusive effect on plaintiff's federal constitutional claims because "... [s]ome of Plaintiffs' alleged constitutional violations here arise out of the conduct at the hearing in this case. Plaintiffs assert due process violations and violations of the First Amendment")*; see also Guru Nanek Sikh Society of Yuba,* 326 F.Supp.2d at 1134 ("It would be counterintuitive, to say the least, for a federal court to shield local government officials from scrutiny under the Constitution and federal civil rights laws by giving preclusive effect to their allegedly discriminatory decisions. Federal common law does not command such an abdication of judicial responsibility").

## II. Claim Two - Deprivation of Equal Protection Under the Fourteenth Amendment in Violation of 42 U.S.C. § 1983

Defendant asserts that a demurrer was sustained on Plaintiffs' equal protection claim in state court and that Plaintiffs failed to amend their complaint. Defendant contends that it is entitled to judgment as a matter of law on this claim on the grounds that the claim was adjudicated on its merits and the state court judgment has res judicata effect. Defendant contends that the equal protection claim fails as a matter of law on the grounds that Plaintiffs were not treated differently from similarly situated individuals and there was a rational relationship between Defendant's decision and legitimate state interests.

### A. Res Judicata

"Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry,* 449 U.S. 90, 94 (1980). A federal court must give to a state court judgment the same preclusive effect as would the courts of the state in which it was rendered. *Chao v. A-One Medical Services, Inc.,* 346 F.3d 908, 921 (2003) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 81 (1984)). The elements of res judicata and collateral estoppel are the same in California and federal courts: "(1) A claim or issue raised in the present action is identical to a claim or issue litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against whom the doctrine is being asserted was a party or in privity with a party to the prior proceeding." *Pitzen v. Superior Court,* 120 Cal.App.4th 1374, 1381 (2004) quoting *Brinton v. Bankers Pension Services, Inc.,* 76 Cal.App.4th 550, 556 (1999).

Under California law, there is a judgment on the merits where a demurrer to a claim is sustained and the Plaintiff fails to amend within the time allowed. *Wells v. Marina City Properties, Inc.,* 29 Cal.3d 781, 785 (Cal. 1981) (citing *Goldtree v. Spreckels*, 135 Cal. 666, 672 (Cal. 1902) ("Since the defendant by his demurrer has admitted all the facts of the plaintiff's case, we see no reason why the judgment should not be regarded as a conclusive determination of the litigation on its merits")). However, the Supreme Court of California has "emphasize[d] that the res judicata effect of a judgment of dismissal, ... after the sustaining of a demurrer, is of limited scope." *Wells,* 29 Cal.3d at 789; *see also Keidatz v. Albany,* 39 Cal.2d 826, 829 (1952) ("[I]t has been the settled rule in this state that a judgment entered on demurrer does not have such broad res judicata effect"). With this in mind, the court in *Wells* stated:

> [A judgment of dismissal after sustaining a demurrer] is a judgment on the merits to the extent that it adjudicates that the facts alleged do not constitute a cause of action. ... If, on the other hand, new or additional facts are alleged that cure the defects in the original pleading, it is settled that the former judgment is not a bar to the subsequent action whether or not plaintiff had an opportunity to amend his complaint.

*Id.* (quoting *Keidatz v. Albany,* 39 Cal.2d 826, 828 (1952) (reasoning that "less prejudice is suffered by a defendant who has had only to attack the pleadings, than by one who has been forced to go to trial until a nonsuit is granted ...")); *see also Goddard v. Security Title Ins. & Guar. Co.*, 14 Cal.2d 47, 52 (1939) (holding that "a judgment of dismissal based upon a demurrer sustained for defects of form, under circumstances where it was possible to plead a good cause of action in another suit[,] ... is not res judicata").

In this case, a demurrer on Plaintiffs' equal protection claim was sustained in San Diego Superior Court on the grounds that "Plaintiffs have failed to allege a required element, ... that Plaintiffs have been treated differently than other people in similar situations." (ECF No. 5-3 at 23). The order stated: "Plaintiffs are granted 20 days leave to amend to allow them to state a cause of action including this element." *Id.* Plaintiffs failed to do so. On June 9, 2009, Plaintiffs filed a request for entry of dismissal of their entire complaint, *Id.* at 18, which the state court granted. *Id.* at 20.

The Court finds that the dismissal of Plaintiffs' equal protection claim in state court does constitute a judgment on the merits because Plaintiffs did not amend their complaint within the time allowed. In the Complaint filed in this Court, as well as in Plaintiff Contasti's supporting declaration, Plaintiffs state that three nearby properties, located at 140,142 and 146 South Granados were "identical in all material ways to plaintiffs' proposed Lot 10 home," and were approved by the City Council. (ECF No. 69-3 at 5; ECF No. 15 at 15). The Court finds that Plaintiffs have alleged "new or additional facts" showing that they were treated differently which "cure the defects in the [state court] pleading." *Wells,* 29 Cal.3d at 789. For res judicata purposes, the dismissal in state court only constitutes a judgment on the merits to the extent that the facts pleaded were insufficient to allege the element of unequal treatment. *See Wells,* 29 Cal.3d at 789; *see also Keidatz,* 39 Cal.2d at 828. The Court concludes that the state court judgment of dismissal does not have res judicata effect on Plaintiffs' Complaint. *See Wells,* 29 Cal.3d at 789*; see also Goddard*, 14 Cal.2d at 52.

### B.     "Class of One" Equal Protection Claim

Under the Equal Protection Clause, "all persons similarly situated should be treated alike" by the government. *City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 439 (1985). "[A]n equal protection claim can in some circumstances be sustained even if the plaintiff has not alleged class-based discrimination, but instead claims that she has been irrationally singled out as a so-called 'class of one.'" *Gerhart v. Lake County, Mont.*, 637 F.3d 1013, 1021 (9th Cir. 2011) (citing *Village of Willowbrook v. Olech,* 528 U.S. 562 (2011)). To succeed on a "class of one" claim, a plaintiff must demonstrate that (1) the defendant intentionally treated plaintiff differently from other similarly situated persons, and (2) there was no rational basis for the difference in treatment. *Olech,* 528 U.S. at 564. In an action where a property owner contends that "she has been unconstitutionally deprived of property through governmental regulation, motions for summary judgment must be viewed with particular skepticism." *Del Monte Dunes at Monterey, Ltd v. City of Monterey,* 920 F.2d 1496 (9th Cir. 1990), *affirmed* 526 U.S. 687 (1999) (citing *Sinaloa Lake Owners Ass'n v. Simi Valley,* 882 F.2d 1398 (9th Cir. 1989)).

### 1.     Intentionally Different Treatment

In *Del Monte Dunes at Monterey, Ltd,* the Court of Appeals for the Ninth Circuit found that the plaintiff's affidavit, alleging that the defendant "arbitrarily and unreasonably limited use and development of [a] property ... whereas owners of comparable property ... were not subjected to these conditions and restrictions," was sufficient to overcome the defendant's motion for summary judgment. 920 F.2d at 1496. Similarly, in this case, Plaintiffs assert that the City's denial of the Lot 10 home was "discriminatory" and constituted "disparate" treatment. Plaintiff Contasti states in his declaration that the permit applications for three other nearby homes, which "were identical in all material ways to the proposed Lot 10 home," were approved by the City Council "in 2006, the year before our applications." (ECF No. 69-3 at 5). Defendant argues that "[w]hat is missing from plaintiff's theory is that the city approved the [permit] application plaintiffs submitted for Lot 9." (ECF No. 32-1 at 12). Defendant

contends that "as a matter of law therefore, plaintiffs cannot claim that they have been treated differently than similarly situated persons. (See *Christian Gospel Church v. San Francisco,* 896 F.2d 1221, 1225 (9th Cir. 1990))." *Id.* The Defendant did approve Plaintiff's application for Lot 9; however, that does not indicate that the Defendant treated Plaintiffs and "persons similarly situated ... alike" when it denied the permit application for Lot 10. *Cleburne Living Ctr., Inc.,* 473 U.S. at 439. Construing all reasonable inferences in the light most favorable to the nonmoving party, the Court concludes that Plaintiffs have come forward with facts that, if proven, support a finding that the Defendant intentionally treated Plaintiffs differently from other similarly situated permit-seeking property owners.

### 2. Rational Basis Test

In this case, the question is whether Defendant had a rational basis for making a distinction between Plaintiffs' Lot 10 property application and the applications of other similarly situated property owners. *See Gerhart,* 637 F.3d at 1023 ("[T]he rational basis prong of a 'class of one' claim turns on whether there is a rational basis for the *distinction*, rather than the underlying government *action"*); *see also Olech,* 528 U.S. at 564 (explaining that a class of one claim requires plaintiff to show that "there is no rational basis for the difference in treatment"). The City Council, in passing Resolution 2007-125, denied the permit application for Lot 10, stating: "[t]he proposed single-family residence is designed in a manner that is incompatible with other nearby development because it is not compatible with existing or potential future single family development. ... The site layout and design of the proposed project do not visually and functionally enhance its intended use ...." (ECF No. 5-3 at 56-57). Plaintiffs assert that Defendant's "justifications were merely cover for the City Council's true ulterior and impermissible motives. (ECF No. 69 at 21). More likely (and presenting factual issues for trial), because a City Council member lived across the street and the City Mayor lived in the neighborhood, they each sought to limit the size of Plaintiff's proposed homes to suit their own personal interests." *Id.*

The Court of Appeals for the Ninth Circuit has stated: "it is clearly established that a

plaintiff may pursue an equal protection claim by raising a 'triable issue of fact as to whether the defendants' asserted [rational basis] ... was merely a pretext' for differential treatment." *Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 945-46 (9th Cir. 2004)*; see also Fajardo v. County of Los Angeles*, 179 F.3d 698, 700 n. 2 (9th Cir. 1999) ("If Defendants' justification for discriminating against domestic-violence crimes is nothing more than pretextual, then Defendants' actions are arbitrary and violate the Equal Protection Clause"). On summary judgment, "[a] plaintiff may show pretext by creating a triable issue of fact that either: (1) the proffered rational basis was objectively false; or (2) the defendant actually acted based on an improper motive." *Goldberg*, 375 F.3d 936 at 946; *see also Engquist v. Or. Dep't of Agric.*, 478 F.3d 985, 993 (9th Cir. 2007) ("In the regulatory land-use context, 'acts that are malicious, irrational, or plainly arbitrary do not have a rational basis'")*; Valley Outdoor, Inc. v. City of Riverside,* 446 F.3d 948, 955 (9th Cir.2006) (applying "class of one" theory to city's denial of billboard permits despite esthetic values as the alleged basis for the denial); *Bookstore, Inc. v. Leonard*, 11-35436, 2012 WL 2992131 (9th Cir. July 23, 2012).

Plaintiff Contasti states that at a July 11, 2007 hearing, then-Mayor Lesa Heebner, who "lived very close" to Plaintiffs' lots, stated that she was "very interested in saving" a church located on Lot 10 because she "loved this building." (ECF No. 69-3 at 3). Plaintiff Contasti states that the Mayor and another City Council member, David Roberts, both discussed the possibility of purchasing the property "but were advised by the City Manager that "there was not enough 'in the City coffers'" at the "previous price (of $1.4 million)." *Id.* at 3-7. Two Staff Reports prepared for the July 11, 2007 City Council hearing recommended that Plaintiffs' permit applications for Lots 9 and 10 be approved. At the July 11, 2007 hearing, the Lot 9 permits were conditionally approved. (ECF No. 69-2 at 83). Plaintiff Contasti states that the City Council told him he could continue to pursue permits for Lot 10, but states that he was given no guidance regarding changes that he should make to his design proposal. (ECF No. 69-3 at 5). Instead, Plaintiff Contasti states that he was told that he had "one bite at the apple" and was advised to "take your best shot." *Id.* A Staff Report prepared for the September 19, 2007 City Council meeting, where there the permits for Lot 10 were denied, states: "The

1  applicant has delayed the demolition of the Church pending approval of the Development
2  Review and Structure Development Permits [for Lot 10]." (ECF No. 69-2 at 122). Defendant
3  does not dispute these factual assertions, but contends that "[t]he subjective intent of the City
4  Council members is irrelevant." (ECF No. 32-1 at 15); *but cf. Lockary v. Kayfetz*, 917 F.2d
5  1150, 1155 (9th Cir. 1990) ("Construed in the light most favorable to appellants, [defendant's]
6  refusal to grant water hookups to [plaintiffs] may have been arbitrary or even malicious
7  conduct prohibited by due process and equal protection"); *but cf. Engquist*, 478 F.3d at 993
8  ("In the regulatory land-use context, acts that are malicious, irrational, or plainly arbitrary do
9  not have a rational basis").

   Construing the facts in the light most favorable to the Plaintiff, the Court concludes that there is a triable issue of fact as to whether the Defendant's alleged justification for denying Plaintiff's application was "based on an improper motive" and served as a "pretext for differential treatment." *Goldberg*, 375 F.3d at 936*; see also Armendariz v. Penman,* 75 F.3d 1311, 1327 (9th Cir. 1996) (en banc) (finding "a triable issue of fact as to whether the [city's] asserted rationale of directing efforts to enforce the housing code in high-crime areas was merely a pretext" to reduce property values for the city to purchase them at a reduced rate); *compare Patel v. Penman,* 103 F.3d 868, 876 (9th Cir. 1996) (recognizing that pretext might have been shown if the city was "using its code enforcement process not to enforce compliance with the codes but rather to drive ... downtown motels out of business").

## CONCLUSION

IT IS HEREBY ORDERED that the Motion for Summary Judgment or in the Alternative Summary Adjudication of Issues (ECF No. 32) filed by Defendant City of Solana Beach is DENIED. Counsel shall contact Magistrate Judge Barbara Lynn Major as soon as possible to schedule a case management conference.

DATED: September 18, 2012

*William Q. Hayes*

**WILLIAM Q. HAYES**
United States District Judge