1
2
3
4
5
6
7

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW CONTASTI, an individual; ANNETTE CONTASTI, an individual; and JOE HERNANDEZ, an individual, | CASE NO. 09CV1371 WQH (BLM) |
| Plaintiffs, | ORDER |
| vs. | |
| CITY OF SOLANA BEACH, | |
| Defendant. | |

HAYES, Judge:

The matter before the Court is the Defendant's Motion in Limine to Preclude Evidence, Testimony or Argument Relating to Violation of Substantive Due Process (ECF No. 108).

### BACKGROUND FACTS

On January 28, 2010, Plaintiffs filed the First Amended Complaint ("Complaint"), alleging two claims for relief against Defendant City of Solana Beach based upon the decision of the City Council to deny Plaintiffs' application for a development review permit for Lot 10 located at 360 North Granados Avenue in the City of Solana Beach. (ECF No. 15). In the first claim, Plaintiffs assert that the denial of the development review permit was arbitrary and unreasonable, constituting a deprivation of due process in violation of 42 U.S.C. § 1983. In the second claim, Plaintiffs assert that they were treated differently from similarly situated persons when

1    the City Council denied their permit for Lot 10, constituting a deprivation of equal
2    protection in violation of 42 U.S.C. § 1983.

3         On April 29, 2011, Defendant City of Solana Beach filed a Motion for Summary
4    Judgment, or in the alternative, Summary Adjudication of Issues ("Motion for Summary
5    Judgment"). (ECF No. 32). Defendant argued that the Court should grant summary
6    judgment in its favor on Plaintiff's substantive due process claim because "plaintiffs
7    failed to file a writ of mandate [in a previous state court action], [and] their claim . . .
8    is barred by the doctrines of res judicata and collateral estoppel. *Id.* at 5. Defendant
9    argued that the Court should grant summary judgment on Plaintiff's equal protection
10   claim "because [the claim] has been adjudicated, and because the City's decision was
11   rationally related to a permissible state objective." *Id.*

12        On July 26, 2011, the Court issued an Order granting the Motion for Summary
13   Judgment, or in the alternative, Summary Adjudication of Issues. (ECF No. 36). With
14   regard to the due process claim, the Court stated: "Plaintiffs did not file an opposition
15   to the motion for summary judgment, despite an opportunity to do so. Plaintiffs have
16   not shown that there are genuine issues for trial that preclude summary judgment." *Id.*
17   at 6. The Court concluded that the claim for violation of due process was barred. With
18   regard to the equal protection claim, the Court found "that Defendant has carried its
19   burden pursuant to Rule 56 and Plaintiffs have not shown that there are genuine issues
20   for trial that preclude summary judgment." *Id*. at 7.

21        On July 27, 2011, the Clerk of the Court issued a Judgment against Plaintiffs
22   Andrew Contasti, Annette Contasti, and Joe Hernandez. (ECF No. 37).

23        On January 24, 2012, Plaintiff Andrew Contasti filed a Motion for Relief from
24   Judgment pursuant to Federal Rule of Civil Procedure 60(b). (ECF No. 45).

25        On July 9, 2012, the Court issued an Order granting the Motion for Relief from
26   Judgment finding that Plaintiffs had demonstrated excusable neglect and extraordinary
27   circumstances sufficient to warrant relief. (ECF No. 61).

28        On August 6, 2012, Plaintiffs filed an opposition to Defendant's Motion for

Summary Judgment. (ECF No. 69). Plaintiffs argued that they were not precluded from bringing their due process claim in this Court "because Plaintiffs' § 1983 claim for violation of their right to Substantive Due Process is different from Plaintiffs' application for a permit which was denied by the City Council in the underlying administrative proceeding." *Id.* at 13. With respect to the equal protection claim, Plaintiffs argued that a triable issue of fact existed "because the claim has not already been adjudicated and the city unjustifiably treated Plaintiffs differently." *Id.* at 17. On August 13, 2012, Defendant filed a reply in support of the Motion for Summary Judgment. (ECF No. 70).

On September 18, 2012, the Court denied Defendant's Motion for Summary Judgment in its entirety. (ECF No. 71). With respect to Plaintiff's substantive due process claim, the Court concluded that "the preclusive effect of the City Council's decision does not extend to the substantive due process claim presented in this federal action." *Id.* at 10. With respect to Plaintiffs' equal protection claim, the Court concluded that "there is a triable issue of fact as to whether the Defendant's alleged justification for denying Plaintiff's application was 'based on an improper motive' and served as a 'pretext for differential treatment.'" *Id.* at 16 (citation omitted).

On May 24, 2013, the Court issued an Order denying Defendant's Motion for Leave to File Second Summary Judgment Motion on the grounds that a second summary judgment based upon an expanded factual record was not appropriate. (ECF No. 96).

The parties subsequently filed motions in limine and on September 6, 2013, the Court held a hearing on the motions in limine. (ECF No. 139).

**CONTENTIONS OF THE PARTIES**

Defendant contends that, as a matter of law, Plaintiffs were not deprived of a constitutionally protected property interest when the City Council denied their application for a development review permit. (ECF No. 108 at 2). Defendant contends that Plaintiffs should be precluded from presenting evidence, testimony or argument

relating to a violation of either substantive or procedural due process. *Id.* at 1. Defendant asserts that: "The permit at issue in this case is not the objective, structure development permit, but the discretionary *development review permit.*" *Id.* at 3. Defendant asserts that the development review permit for Lot 10 was denied "because it did not comply with the special discretionary development criteria as set forth in [SMBC] Section 17.68.040.F." *Id.* at 4. Defendant contends that the denial of the development review permit based upon discretionary considerations cannot form the basis for a property interest. *Id.* at 7. Because Plaintiffs cannot establish that they had a property interest in the special discretionary permit, Defendant contends that Plaintiffs cannot establish a constitutional violation. *Id.* at 7–8.[1]

Plaintiffs agree that the due process claim requires that a state actor deprived them of a constitutionally protected life, liberty or property interest. (ECF No. 126 at 4). Plaintiffs contend that Defendant "is wrong on its central legal argument, which is that there can be no protected property interest, and therefore no substantive due process violation, simply because the City had the right to exercise discretion in the permitting process." *Id.* at 5. Plaintiffs assert that typical land use disputes involving alleged procedural irregularities, violations of state law, and unfairness ordinarily do not implicate substantive due process, but that a due process violation is established by the arbitrary or irrational conduct taken in this case. *Id.* at 13. Plaintiffs further contend that they are able to demonstrate the violation of a "vested property right," on the grounds that Defendant denied their permit for noncompliance with Ordinance 357, not yet in effect of the date the application was "deemed complete" in violation of Cal. Govt .Code § 66474.2(a). *Id.* at 15.

## UNDISPUTED FACTS

Plaintiffs Andrew Contasti, Annette Contasti, and Joe Hernandez owned two

---

[1]Defendant has not been diligent in making this argument. However, Plaintiffs do not assert and this Court cannot find that this case can proceed to trial without resolving this issue.

adjacent lots, Lot 9 and Lot 10, located at 360 North Granados Avenue in the City of Solana Beach.   In February 2007, Plaintiffs submitted applications to build homes on two lots that they owned in the City of Solana Beach, Lots 9 and 10.   Plaintiffs submitted two applications to the City of Solana Beach for two permits for each lot: (1) a development review permit; and (2) a structure development permit.

On July 11, 2007, the City Council held a hearing and approved Plaintiffs' permit application for Lot 9 finding that no adverse effects upon neighboring properties have been identified.  Plaintiffs agreed to reduce the 4,031 square footage home proposed for Lot 9 by 230 square feet and submitted revised drawings after the hearing, which were approved by the City Council.

The hearing was continued to August 22, 2007 to consider the permit application for the Lot 10 home, which was designed to be 4,387 square feet.  After the July 11, 2007 hearing, Plaintiffs submitted revised drawings which reduced the size of the Lot 10 home by 258.25 square feet.  On August 22, 2007, the hearing was continued to September 19, 2007.  On September 19, 2007, the City Council denied Plaintiffs' permit application for the 4,387 square foot design of the  Lot 10 home.

On October 10, 2007, the City Council issued Resolution 2007-125, which formally denied the permit application for Lot 10.  The City Council resolution found that the proposed Lot 10 development "***does not*** comply with the following development criteria as set forth in Solana Beach Municipal Code Section 17.68.040.F:"

> a. Relationship with Adjacent Land Uses - The proposed single family residence is designed in a manner that is incompatible with other nearby development because it is not compatible with existing or potential future single family development. Adverse effects upon neighboring properties have been identified from this development. An analysis of the development characteristics of nearby residences was completed to compare the proposed residence with nearby residential development. The area analyzed included lots within the same LMRd Zone that are located on the east side of North Granados and the west side of Glenmont Avenue southward to El Viento and northward approximately half way to Lynnwood Avenue. The average lot size in the area analyzed is approximately 8,500 square feet and ranges from 8,300 to 16,600 square feet. The average total floor area of structures is approximately 1,700 square feet and ranges from 947 to 3,721 square feet. The proposed 4,387 square foot (3,987 gross square foot) residence is approximately 2,700

square feet larger than the average existing residences. The maximum size of future development, which would be subject to Ordinance 357, would be approximately 3,600 gross square feet. The proposed residence is approximately 387 square feet larger than the maximum size of future residences in the area analyzed.

b. Building and Structure Placement - The site layout and design of the proposed project do not visually and functionally enhance its intended use as a single-family residence because the bulk and scale of the proposed project is incompatible with nearby structures.

(ECF No. 112 at 23–24). Without a development review permit, Plaintiffs could not obtain a structure development permit pursuant to the Solana Beach Municipal Code ("SBMC").

## ANALYSIS

The Fourteenth Amendment to the United States Constitution provides that a State shall not "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. Congress has created a federal cause of action pursuant to 42 U.S.C. § 1983 for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." "[A] substantive due process claim must, as a threshold matter, show a government deprivation of life, liberty, or property." *Action Apartment Ass'n, Inc.*, 509 F.3d 1020, 1026 (9th Cir. 2007) (internal quotation marks and citation omitted).

In *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 755 (2005), Respondent alleged that Petitioner, the town of Castle Rock, Colorado, violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution when its police officers, acting pursuant to official policy or custom, failed to respond properly to her repeated reports that her estranged husband was violating the terms of a restraining order. Respondent claimed a violation of her due process rights "on the ground that she had a property interest in police enforcement of the restraining order against her husband; and that the town deprived her of this property without due process by having a policy that tolerated nonenforcement of restraining orders." *Id*.

The Supreme Court specifically addressed: "whether what Colorado law has

given respondent constitutes a property interest for the purposes of the Fourteenth Amendment."  *Id*. at 756.  The Supreme Court relying upon the analysis in  *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972) explained:

> "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire" and "more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).  Such entitlements are, " 'of course, ... not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.' " *Paul v. Davis*, 424 U.S. 693, 709, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) (quoting *Roth, supra*, at 577, 92 S.Ct. 2701); see also *Phillips v. Washington Legal Foundation*, 524 U.S. 156, 164, 118 S.Ct. 1925, 141 L.Ed.2d 174 (1998).

> Our cases recognize that a benefit is not a protected entitlement if government officials may grant or deny it in their discretion. See, *e.g.*, *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 462-463, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989).

*Town of Castle Rock*, 545 U.S. at 756.  The Supreme Court stated that this "determination, despite its state law underpinnings, is ultimately one of federal constitutional law." *Id*. at 756-757.

> "Although the underlying substantive interest is created by 'an independent source such as state law,' *federal constitutional law* determines whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause." *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978) (quoting *Roth, supra*, at 577, 92 S.Ct. 2701; emphasis added); cf. *United States ex rel. TVA v. Powelson*, 319 U.S. 266, 279, 63 S.Ct. 1047, 87 L.Ed. 1390 (1943).  Resolution of the federal issue begins, however, with a determination of what it is that state law provides.

545 U.S. at 575.  "We do not believe that these provisions of Colorado law truly made enforcement of restraining orders *mandatory*." *Id*. at 760.  Relying upon the "deep-rooted nature of law-enforcement discretion," the Court concluded that "[t]his is not the sort of 'entitlement' out of which a property interest is created." *Id*. at 764.

"A threshold requirement to a substantive or procedural due process claim is the plaintiff's showing of a liberty or property interest protected by the Constitution.  A protected property interest is present where an individual has a reasonable expectation of entitlement deriving from 'existing rules or understandings that stem from an

independent source such as state law.'" *Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir. 1994) *(quoting Roth,* 408 U.S. at 577). "A reasonable expectation of entitlement is determined largely by the language of the statute and the extent to which the entitlement is couched in mandatory terms." *Id.* (internal quotation marks and citation omitted).

In *Thornton v. City of St. Helens*, 425 F.3d 1158, 1164 (9th Cir. 2005), the Court of Appeals for the Ninth Circuit applied the analysis in *Roth* to decide whether an applicant for the renewal of a state operating license had a property interest to support a claim for substantive due process. The Court of Appeals stated:

> Property interests are not created by the Constitution, but "by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents v. Roth*, 408 U.S. 564 , 577, 92 S.Ct. 2701, 33 L. Ed. 548 (172). To have a property interest in a government benefit, such as the right to renew a certificate, "a person clearly must have more than . . . a unilateral expectation of entitlement to it." *Id.*
> . . .
>
> At one pole, a state operating license that can be revoked only 'for cause' creates a property interest. At the opposite pole, a statute that grants the reviewing body unfettered discretion to approve or deny an application does not create a property right. Whether a statute creates a property interest in the renewal of an existing operating license falls somewhere in the middle of those extremes. The answer to that question depends on the extent to which the governing statute contains mandatory language that restricts the discretion of the reviewing body to deny renewal to applicants who claim to meet the statutory requirements. In other words, if the governing statute directs that a license shall be renewed upon compliance with certain criteria, none of which involve the exercise of discretion by the reviewing body, the licensee has a property right in the reissuance of the license. Conversely, an applicant does not have a property interest in the renewal of a license if the reviewing body has discretion to deny renewal or to impose licensing criteria of its own creation.

*Thornton*, 425 F.3d at 1164–1165 (internal quotation marks and citations omitted). In *Samson v. City of Bainbridge Island,* 683 F.3d 1051 (9th Cir. 2012), the Court of Appeals applied the analysis in *Roth* in the land use context. The Court of Appeals stated: "Property interests derive not from the Constitution but from 'existing rules or understandings that stem from an independent source such as state- law rules or understandings that secure certain benefits and that support claims of entitlement to

those benefits.'" *Id.* at 1051.  *But see Richter v. City of Des Moines*, No. 12-35370, 2013 WL 4406689, at *3 (9th Cir., August 19, 2013) (Ikuta, J., dissenting) ("Expanding *Roth* beyond the limited context of government benefits, and into the traditional realm of core property interests that the state cannot redefine at will, is a constitutionally untenable approach to assessing property rights.")

The Court of Appeals has recognized a protected interest supporting a substantive due process claim where the landowner was granted a building permit or met all the conditions for a building permit.  *See e.g., Del Monte Dunes v. City of Monterey*, 920 F.2d 1496, 1508 (9th Cir. 1990) (reversing summary judgment for trial of a substantive due process claim where the city council approved a proposed oceanfront development but later rejected the plan); *Bateson v. Geisse*, 857 F.2d 1300, 1303–04 (9th Cir. 1988) (finding a substantive due process claim where a developer had satisfied all conditions to receive a building permit when the city council arbitrarily initiated a zone change that prohibited the proposed project and caused the permit to be denied.).  But the Court of Appeals has not found a protected property interest in a landowner's use of his property without a valid land use permit or in violation of valid land use regulations.  In *Gutay Christian Fellowship v. County of San Diego*, 670 F.3d 957, 985 (9th Cir. 2011), the Court of Appeals concluded that the Church had no constitutionally protected property interest in use of its building for religious services without a valid Use Permit and in violation of land use regulations.  Citing both *Thornton* and *Roth,* the Court stated:

> Here, the Church has provided no California law or precedent establishing that it had a vested property right in using the building for religious services where it never obtained a permit for doing so and the applicable zoning ordinance never permitted use of the property for religious services at any point during the Church's tenancy.

*Id.* at 985.

In this case, the Court is required, as a threshold matter, to determine whether Plaintiffs have a protected property interest for the purposes of the Fourteenth Amendment created by "existing rules or understandings that stem from an independent source such as state law." *Roth*, 408 U.S. at 577.  The Court must decide whether

Plaintiffs had a "reasonable expectation of entitlement" in the issuance of a development review permit which was denied by the City of Solana Beach stemming from the Solana Beach permitting regulations. *Wedges/Ledges of Cal. Inc.*, 24 F.3d at 61–62. The Court must take into consideration the language of the municipal code and the extent to which any entitlement is couched in mandatory terms. *Id.*

Pursuant to Solana Beach Municipal Code section 17.68.040.B.2, a structure development permit cannot issue until a development review permit issues: "No building permit or grading permit shall be issued relating to a project for which a development review permit is required by this title until a development review permit is obtained." SBMC § 17.68.040.B.2. The procedure for a development review permit states in part:

> Development review permits.
> A. Purpose and Intent. It is the purpose and intent of these regulations to provide for the review of certain classes of development projects which due to their scale, proximity to environmentally sensitive resource areas, or unique design features as permitted by a zone or specific plan, require special discretionary consideration to insure consistency with the general plan and the intent of the zone in which the property is located. These regulations are intended to encourage site and structural development which (1) respects the physical and environmental characteristics of the site, (2) ensures safe and convenient access and circulation for pedestrians and vehicles, and (3) exemplifies the best professional design practices. It is further the intent of this section to eliminate confusion and processing burdens by the consolidation of all overlay zone and special district requirements into a single permit process.

SBMC § 17.68.040.A.

The SMBC sets forth the process for obtaining a development review permit:

> *C. Authority to Grant Permit.*
> 1. The city council shall have the authority to grant development review permits in accordance with the procedures of this section and to impose reasonable conditions where necessary to achieve consistency with the requirements of this section.
> ...
> *F. Development Review Criteria.*
>
> Development plans shall be reviewed for compliance with the following specific criteria:
>
> 1. Relationship with Adjacent Land Uses. The development shall be designed in a manner compatible with and where feasible, complementary

to existing and potential development in the immediate vicinity of the project site. Site planning on the perimeter of the development shall give consideration to the protection of surrounding areas from potential adverse effects, as well as protection of the property from adverse surrounding influences.
2. Building and Structure Placement. Buildings and structures shall be sited and designed in a manner which visually and functionally enhances their intended use. Multifamily residential buildings shall be sited to avoid crowding and to allow for a functional use of the space between buildings. ...

*G. Public Hearing.*

The director of community development shall transmit the application for a development review permit together with a recommendation thereon to the city council when all necessary reports and processing have been completed. The city council shall hold a public hearing on each application for a development review permit and shall render its decision by resolution. The hearings shall be set and notice given as prescribed in SBMC 17.72.030 (Public Hearing and Notice Requirements).

*H. City Council Determination and Findings.*

The city council may approve or conditionally approve a development review permit only if all of the following findings can be made:

1. The proposed development is consistent with the general plan and all applicable requirements of this title, including special regulations, overlay zones, and specific plans.
2. The proposed development complies with the development review criteria set forth in subsection F of this section.
3. All required permits and approvals, including variances, conditional use permits, comprehensive sign plans, and coastal development permits have been obtained prior to or concurrently with the development review permit.

If the above findings cannot be made, the city council shall deny the development review permit.

*J. Finality of Decision.*

The decision of the city council on a development review permit or amendment shall be final.

(ECF No. 112 at 53–56, Def. Exh. H).

The undisputed facts of this case establish that the decision challenged by Plaintiffs is limited to the decision to deny the development review permit. There is no facial challenge to the municipal code establishing the development review provisions or to the application of the development review permit to Lot 10. The express provisions of the municipal code accord significant discretion to the City Council in

approving certain classes of development projects.  The municipal code details the "Projects Requiring Development Review Permits" and Plaintiffs make no claim that the project did not require a development review permit.  (ECF No. 112 at 54).

SBMC § 17.68.040.A provides: "It is the purpose and intent of these regulations to provide for the review of certain classes of development projects which due to their scale, proximity to environmentally sensitive resource areas, or unique design features as permitted by a zone or specific plan, *require special discretionary consideration* to insure consistency with the general plan and the intent of the zone in which the property is located."  (emphasis added).  SBMC § 17.68.040.F provides that "[d]evelopment plans shall be reviewed for compliance with the following specific criteria":

> 1. Relationship with Adjacent Land Uses. The development shall be designed in a manner compatible with and where feasible, complementary to existing and potential development in the immediate vicinity of the project site. Site planning on the perimeter of the development shall give consideration to the protection of surrounding areas from potential adverse effects, as well as protection of the property from adverse surrounding influences.
> 2. Building and Structure Placement. Buildings and structures shall be sited and designed in a manner which visually and functionally enhances their intended use. Multifamily residential buildings shall be sited to avoid crowding and to allow for a functional use of the space between buildings.

(ECF No. 112 at 55).  These express provisions of the municipal code accord significant discretion to the City Council within certain classes of development projects, subject to specific review criteria which reflect valid regulatory concerns.

The undisputed facts establish that the City complied with the public hearing and notice requirements.  The City Council issued City Resolution 2007-125, which formally denied the permit application for Lot 10, making the required findings based upon the development review criteria set forth in the municipal code.  The City Council took into consideration the average lot site and the average total floor area of structures in the surrounding area.  The City Council found that "[t]he proposed 4,387 square foot (3,987 gross square foot) residence is approximately 2,700 square feet larger than the average existing residences." (ECF No.112 at 23).  The City Council complied with the procedural requirements of the regulation and determined that "[t]he proposed single-

family residence is designed in a manner that is incompatible with other nearby residences because it is not compatible with existing or potential future single family development.  Adverse effects upon neighboring properties have been identified from this development." *Id.*  The City Council concluded that "[t]he site layout and design of the proposed project do not visually and functionally enhance its intended use as a single-family residence because the bulk and scale of the proposed project is incompatible with nearby structures." *Id.* at 23–24.  The undisputed facts establish that the City Council made findings which relied upon valid regulatory concerns.

The specific provisions of the municipal code and the findings of the City Council, establish that the City Council was entitled to take into consideration Ordinance 357 but the City Council did not prematurely apply Ordinance 357 in violation of Cal. Govt. Code § 66474.2(a).[2]  The municipal code specifically directs the City Council to review each proposed development plan to determine whether the plan is designed in a manner compatible with "existing and potential development in the immediate vicinity of the project site."  SBMC § 17.68.040.F.  The municipal code further requires that the City Council approve a plan only if the proposed development complies with the criteria set forth in SBMC § 17.68.040.F.

Under California law, "no protected property interest exists when there is significant discretion accorded the agency by law, regardless of whether or to what degree that discretion is actually exercised." *Breneric Assoc. v. City of Del Mar*, 69 Cal. App. 4th 166, 183–84 (1998).  In *Breneric*, the California Court of Appeal held that a homeowner who was denied an application to build an addition to an existing residence could not assert a cognizable substantive due process claim pursuant to 42 U.S.C. § 1983 against the City of Del Mar.  *Id.* at 184.  The California Court of Appeal

---

[2]Cal. Govt. Code section 66474.2 provides in part: "[I]n determining whether to approve or disapprove an application for a tentative map, the local agency shall apply only those ordinances, policies, and standards in effect at the date the local agency has determined that the application is complete pursuant to Section 65943 of the Government Code."  Cal. Govt. Code § 66474.2(a).

concluded that "denial of a discretionary land use permit does not infringe on a constitutionally protected property interest for the purposes of section 1983." *Id.* at 18; *see also Clark v. City of Hermosa Beach*, 48 Cal. App. 4th 1152, 1180–81 (1996) ("[A] cognizable property interest exists only when the discretion of the issuing agency is so narrowly circumscribed that approval of a proper application is virtually assured. . . . Moreover, the standard focuses on the amount of discretion accorded the issuing agency by law, not on whether or to what degree that discretion is actually exercised.  Even if in a particular case, objective observers would estimate that the probability of issuance was extremely high, the opportunity of the local agency to deny issuance suffices to defeat the existence of a federally protected property interest." (internal quotation marks and citations omitted)).

In this case, the municipal code provided the City Council with significant discretion in deciding whether to grant a development review permit. The development permit was limited to certain classes of development projects which require special discretionary consideration.  The City Council retained discretion to deny Plaintiffs' application under the existing regulation for valid regulatory reasons set forth in the municipal code.  State law provides no protected property interest in the discretionary determination. *See Clark,* 48 Cal. App. 4th at 1181–82 ("[T]he opportunity of the local agency to deny issuance suffices to defeat the existence of a federally protected property interest.").

Applying federal constitutional law, the Court concludes that Plaintiffs had no reasonable expectation of entitlement to the development review permit where discretionary considerations based upon legitimate regulatory reasons form the basis for the denial of the permit.  Nothing in the Solana Beach Municipal Code provided that Plaintiffs were entitled to build the home of the size and scale proposed for Lot 10.  The City Council was under an obligation to consider "compatib[ility] with . . . existing and potential development in the immediate vicinity of the project site"; "protection of surrounding areas from potential adverse effects"; and the "visual[] and functional[]"

design of the proposed structure.  (ECF No. 112 at 55)  The City Council was authorized to approve a permit only if certain specific requirements were met, including the requirement that "the proposed development complies with the development review criteria."  *Id*. at 56.  The City Council's determination that the project "does not comply" met the requirements of the municipal code.

No language in the municipal code conferred a right to a permit.  To the extent that the municipal code required notice and hearing, the undisputed facts of this case show that the City Council complied with all requirements of the code and rendered a decision which was not favorable to the Plaintiffs based upon criteria set forth in the code.  Under the undisputed facts of this case, Plaintiffs would have a federal jury second guess the City Council's lawful exercise of discretion.  Applying the law to the undisputed facts of this case, the Court concludes that the Solana Beach Municipal Code provisions for a development review permit do not create "the sort of entitlement out of which a property interest is created."  *Town of Castle Rock*, 545 U.S. at 764.  The undisputed facts and the applicable law establish that Plaintiffs have not established a protected property interest required in order to prevail on the claim for deprivation of substantive due process.

IT IS HEREBY ORDERED that Defendant's Motion in Limine to Preclude Evidence, Testimony or Argument Relating to Violation of Substantive Due Process (ECF No. 108) is granted.

IT IS FURTHER ORDERED that the parties may submit further briefing addressing the procedural due process claim and the equal protection claim in light of the ruling in this order no later than November 8, 2013.  Any reply may be filed by November 15, 2013.

DATED:  October 22, 2013

*William Q. Hayes*

**WILLIAM Q. HAYES**
United States District Judge