1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

8

**SOUTHERN DISTRICT OF CALIFORNIA**

9
10

ANDREW CONTASTI;
ANNETTE CONTASTI;
and JOE HERNANDEZ,

CASE NO. 09CV1371 WQH (BLM)

ORDER

11
12

Plaintiff,

vs.

CITY OF SOLANA BEACH,

13

Defendant.

14
15

HAYES, Judge:

16          The matters before the Court are (1) the motion in limine to preclude any

17   evidence, testimony, or argument relating to violation of right to equal protection (ECF

18   No. 106) filed by Defendant City of Solana Beach and (2) the motion in limine to

19   preclude any evidence, testimony, or argument relating to violation of procedural due

20   process (ECF No. 107) filed by Defendant City of Solana Beach.

21                              **BACKGROUND**

22          On January 28, 2010, Plaintiffs filed the first amended complaint, alleging two

23   claims for relief against Defendant City of Solana Beach based upon the decision of the

24   City to deny Plaintiff's application for a development review permit for Lot 10 located

25   at 360 North Granados Avenue in the City of Solana Beach. (ECF No. 15). In the first

26   claim, Plaintiffs assert that the denial of the development review permit was arbitrary

27   and unreasonable, constituting a deprivation of due process in violation of 42 U.S.C.

28   § 1983. In the second claim, Plaintiffs assert that they were treated differently from

1 similarly situated persons when the City denied their permit for Lot 10, constituting a
2 deprivation of equal protection in violation of 42 U.S.C. § 1983.

3      On April 29, 2011, Defendant City of Solana Beach filed a motion for summary
4 judgment.  (ECF No. 32).  On July 26, 2011, the Court issued an order granting the
5 motion for summary judgment.  (ECF No. 36).  With regard to the due process claim,
6 the Court stated: "Plaintiffs did not file an opposition to the motion for summary
7 judgment, despite an opportunity to do so.  Plaintiffs have not shown that there are
8 genuine issue[s] for trial that preclude[] summary judgment."  *Id.* at 6.  The Court
9 concluded that the claim for violation of due process was barred.  With regard to the
10 equal protection claim, the Court found that "Defendant has carried its burden pursuant
11 to Rule 56 and Plaintiffs have not shown that there are genuine issue[s] for trial that
12 preclude[] summary judgment."  *Id.* at 7.

13      On July 27, 2011, the Clerk of the Court issued a judgment against Plaintiffs
14 Andrew Contasti, Annette Contasti, and Joe Hernandez.  (ECF No. 37).  On January 24,
15 2012, Plaintiff Andrew Contasti filed a motion for relief from judgment pursuant to
16 Federal Rule of Civil Procedure 60(b).  (ECF No. 45).  On July 9, 2012, the Court
17 issued an order granting the motion for relief from judgment finding that Plaintiffs had
18 demonstrated excusable neglect and extraordinary circumstances sufficient to warrant
19 relief.  (ECF No. 61).

20      On August 6, 2012, Plaintiffs filed an opposition to Defendant's motion for
21 summary judgment.  (ECF No. 69).  On September 18, 2012, the Court denied
22 Defendant's motion for summary judgment.  (ECF No. 71).  With respect to Plaintiffs'
23 substantive due process claim, the Court concluded that it was not barred, because "the
24 preclusive effect of the City Council's decision does not extend to the substantive due
25 process claim presented in th[e] federal action."  *Id.* at 10.  With respect to Plaintiffs'
26 equal protection claim, the Court concluded that "there is a triable issue of fact as to
27 whether the Defendant's alleged justification for denying Plaintiffs' application was
28 'based on improper motive' and served as a 'pretext for differential treatment.'"  *Id.* at

16 (citation omitted).

The parties subsequently filed motions in limine and on September 6, 2013, the Court held a hearing on the motions in limine.  Defendant asserts that is it entitled to judgment as a matter of law in this case.  Defendant asserts that the development review permit at issue is a discretionary permit and that the City did not violate Plaintiffs' constitutional rights by denying a discretionary permit.

On October 3, 2013, the Court vacated the jury trial set for December 10, 2013, the final pretrial conference set for December 6, 2013, and all pending deadlines set in the order filed on May 28, 2013.

On October 22, 2013, the Court issued an order granting Defendant's motion in limine to preclude evidence, testimony, or argument relating to violation of substantive due process.  (ECF No. 141).  The Court concluded that "Plaintiffs have not established a protected property interest required in order to prevail on the claim for deprivation of substantive due process." *Id.* at 15.  The Court found that "the Solana Beach Municipal Code provisions for a development review permit do not create the sort of entitlement out of which a property interest is created," because "[u]nder California law, no protected property interest exists when there is significant discretion accorded the agency by law." *Id.* at 13, 15 (internal quotation marks and citations omitted).  The Court concluded that the "discretionary considerations," which "form[ed] the basis for the denial of the permit" were "based upon legitimate regulatory reasons." *Id.* at 10. The Court allowed the parties to submit further briefing addressing the procedural due process claim and the equal protection claim in light of the Court's order.  Defendant subsequently filed supplemental briefing.

## CONTENTIONS OF THE PARTIES

Defendant contends that an equal protection claim cannot be premised upon forms of state action that involve the legitimate exercise of discretionary decision making.  Defendant contends that it could not be found to have acted in an irrational manner when it rejected Plaintiffs' project, because the rejection was a proper exercise

1  of the City's discretion to deny land use approvals, expressly granted by the Solana
2  Beach Municipal Code ("SBMC"). Defendant contends that Plaintiffs' equal protection
3  claim must fail as a matter of law in light of the Court's October 22, 2013 order,
4  "because any finding that the City intentionally treated Plaintiffs differently than other
5  similarly situated property owners, *without a rational basis*, would be inconsistent with
6  the Court's order that the City's denial of the permit was discretionary and related to
7  a legitimate government interest."  (ECF No. 143 at 2).  Defendant contends that
8  aesthetic zoning has been recognized as a legitimate state interest and a proper exercise
9  of the police power.  Defendant contends that Plaintiffs' procedural due process claim
10 must fail as a matter of law in light of the Court's ruling that Plaintiffs do not have a
11 protected property interest in the development review permit.

12     Plaintiffs contend that in order to succeed on their class of one equal protection
13 claim, they must demonstrate that the City intentionally treated them differently than
14 other similarly situated property owners, without a rational basis.  Plaintiffs contend
15 that the Court of Appeals for the Ninth Circuit has applied the class of one equal
16 protection theory in the regulatory land use context to protect against arbitrary,
17 irrational, or malicious government action.  Plaintiffs contend that Defendant's alleged
18 rational basis for denying Plaintiffs' permit is a pretext for Defendant's impermissible
19 attempt to apply an ordinance that limited the size of homes (Ordinance 357), which did
20 not apply to Plaintiffs' application.

21                          **UNDISPUTED FACTS**

22     Plaintiffs Andrew Contasti, Annette Contasti, and Joe Hernandez owned two
23 adjacent lots, Lots 9 and Lot 10, located at 360 North Granados Avenue in the City of
24 Solana Beach.  In February of 2007, Plaintiffs submitted applications to build homes
25 on Lots 9 and 10.  Plaintiffs submitted two applications to the City for two permits for
26 each lot: (1) a development review permit and (2) a structure development permit.

27     Pursuant to SBMC § 17.68.040.B.2, a structure development permit cannot issue
28 until a development review permit issues.  The SBMC sets forth guidelines for the City

Council to use in determining whether to grant a development review permit. SBMC § 17.68.040.A provides: "It is the purpose and intent of these regulations to provide for the review of certain classes of development projects which due to their scale, proximity to environmentally sensitive resource areas, or unique design features as permitted by a zone or specific plan, *require special discretionary consideration* to insure consistency with the general plan and the intent of the zone in which the property is located." (ECF No. 112 at 53) (emphasis added). SBMC § 17.68.040.F provides that "[d]evelopment plans shall be reviewed for compliance with the following specific criteria:"

> 1.  Relationship with Adjacent Land Uses. The development shall be designed in a manner compatible with and where feasible, complementary to existing and potential development in the immediate vicinity of the project site. Site planning on the perimeter of the development shall give consideration to the protection of surrounding areas from potential adverse effects, as well as protection of the property from adverse surrounding influences.
>
> 2.  Building and Structure Placement. Building and structures shall be sited and designed in a manner which visually and functionally enhances their intended use.

*Id.* at 55.

On July 11, 2007, the City Council held a hearing and approved Plaintiff's permit application for Lot 9 finding that the development would not cause adverse effects upon neighboring properties. Plaintiffs agreed to reduce the 4,031 square footage home proposed for Lot 9 by 230 square feet and submitted revised drawings after the hearing, which were approved by the City Council.

The hearing was continued to August 22, 2007 to consider the permit application for the Lot 10 home, which was designed to be 4,387 square feet. Plaintiffs submitted revised drawings which reduced the size of the Lot 10 home by 258 square feet. On August 22, 2007, the hearing was continued to September 19, 2007. On September 19, 2007, the City Council denied Plaintiffs' permit application for the 4,387 square foot design of the Lot 10 home.

On October 10, 2007, the City Council issued Resolution 2007-125, which

formally denied the permit application for Lot 10.  The City Council resolution found that the proposed development for Lot 10 "does not comply with the following development criteria as set forth in SBMC Section 17.68.040F:"

> a.  <u>Relationship with Adjacent Land Uses</u> - The proposed single family residence is designed in a manner that is incompatible with other nearby development because it is not compatible with existing or potential future single family development.  Adverse effects upon neighboring properties have been identified from this development.  An analysis of the development characteristics of nearby residences was completed to compare the proposed residence with nearby residential development.  The area analyzed included lots within the same LMRd Zone that are located on the east side of North Granados and the west side of Glenmont Avenue southward to El Viento and northward approximately half way to Lynnwood Avenue.  The average lot size in the area analyzed is approximately 8,500 square feet and ranges from 8,300 and 16,600 square feet.  The average total floor area of structures is approximately 1,700 square feet and ranges from 947 to 3,721 square feet.  The proposed 4,387 square foot (3,987 gross square foot) residence is approximately 2,700 square feet larger than the average existing residences.  The maximum size of future development, which would be subject to Ordinance 357, would be approximately 3,600 gross square feet.  The proposed residence is approximately 387 square feet larger than the maximum size of future residences in the area analyzed.

> b.  <u>Building and Structure Placement</u> - The site layout and design of the proposed project do not visually and functionally enhance its intended use as a single family residence because the bulk and scale of the proposed project is incompatible with nearby structures.

*Id.* at 23–24.  Without a development review permit, Plaintiffs could not obtain a structure development permit pursuant to the SBMC.

## ANALYSIS

<u>Equal Protection Claim</u>

The United States Supreme Court has "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  In *Gerhart v. Lake Cty. Mont.*, 637 F.3d 1013 (9th Cir. 2011), the Court of Appeals for the Ninth Circuit explained that in order for a plaintiff to succeed on a class of one claim, the plaintiff "must demonstrate that [the defendant]: (1) intentionally (2) treated [the plaintiff] differently than other similarly situated

property owners, (3) without a rational basis." *Id.* at 1022.  Although plaintiffs must demonstrate that the defendant's decision to treat the plaintiff differently was intentional, plaintiffs "need not show that [the defendants] were motivated by subjective ill will." *Id.*  However, "[t]he class-of-one doctrine does not apply to forms of state action that 'by their nature involve discretionary decision making based on a vast array of subjective, individualized assessments.'" *Towery v. Brewer*, 672 F.3d 650, 660 (9th Cir. 2012) (quoting *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 603 (2008)).

In *Engquist*, a former state employee who had been effectively laid off in a reorganization brought a class of one equal protection claim on the grounds that she had been fired for "arbitrary, vindictive, and malicious reasons." 553 U.S. at 595.  The Supreme Court held that the "class-of-one theory of equal protection has no application to public employment decisions," largely because such decisions "by their nature involve discretionary decision making based on a vast array of subjective, individualized assessments." *Id.* at 603.  The Court distinguished *Olech*, in which it had recognized class of one equal protection claims in the land use context.  *Id.* at 602.  In *Olech*, the Court held that the plaintiff could assert an equal protection violation where the village regularly required 15-foot easements to connect a water supply, but required a 33-foot easement from the plaintiff.  528 U.S. at 564.  The Court in *Engquist* explained that "*Olech* and the cases on which it relied [involved] a clear standard against which departures, even for a single plaintiff, could be readily assessed." 553 U.S. at 602.  The Court noted: "There was no indication in *Olech* that the zoning board was exercising discretionary authority based on subjective, individualized determinations—at least not with regard to easement length, however typical such determinations may be as a general zoning matter." *Id.* at 602–03.  The Court explained:

> There are some forms of state action, however, which by their nature involve discretionary decision making based on a vast array of subjective, individualized assessments. In such cases[,] the rule that people should be treated alike, under like circumstances and conditions is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion

09CV1371 WQH(BLM)

granted.  In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

*Id.* at 603.  The Court explained that in the public employment context, "[t]o treat employees differently is not to classify them in a way that raises equal protection concerns.  Rather, it is simply to exercise the broad discretion that typically characterizes the employer-employee relationship.  A challenge that one has been treated individually in this context, instead of like everyone else, is a challenge to the underlying nature of the government action."  *Id.* at 605.  The Court concluded: "It is no proper challenge to what in its nature is a subjective, individualized decision that it was subjective and individualized."  *Id.* at 604.

Courts have extended the rational of *Engquist* to other contexts in which a plaintiff challenges a discretionary state action under a class of one equal protection theory.  *See, e.g.*, *Towery*, 672 F.3d at 660–61(rejecting application of class of one theory to prison officials' discretionary decisions concerning inmates in a challenge to Arizona's lethal injection protocol); *Flowers v. City of Minneapolis*, 558 F.3d 794, 799–800 (8th Cir. 2009) (rejecting application of class of one theory to investigative decisions of police officers); *United States v. Moore*, 543 F.3d 891, 901 (7th Cir. 2008) (rejecting application of class of one theory to prosecutorial discretion, because "the discretion conferred on prosecutors in choosing whom and how to prosecute is flatly inconsistent with a presumption of uniform treatment"); *Kolstad v. County of Amador*, 13-01279, 2013 WL 6065315, at *7 (E.D. Cal. Nov. 14, 2013) (noting that it was "questionable" whether plaintiffs' equal protection class of one claim based on selective enforcement of the county code against plaintiffs' property may proceed against the county).  *But see Gerhart*, 637 F.3d at 1017 (applying class of one theory to county's denial of plaintiff's approach permit where the county did not have "any documented process or guidance for the Commissioners to follow in deciding whether to grant an approach permit" and the county "often turn[ed] a blind eye to a property owner who builds an approach without a permit").

In *Las Lomas Land Co. v. City of Los Angeles*, 177 Cal. App. 4th 837 (2009), the California Court of Appeal held that the class of one equal protection theory was inapplicable to the city's decision to deny approval of the plaintiff's proposed development project, which "presented complex urban planning and land use issues." *Id.* at 860.  The California Court of Appeal explained: "The decision whether to approve a project of this sort ordinarily would involve numerous public policy considerations and the exercise of discretion based on a subjective, individualized determination. Such a decision is the antithesis of the simple issue presented in *Olech*."  *Id.*

In this case, the decision challenged by Plaintiffs is limited to the decision to deny the development review permit. *See Contasti v. City of Solana Beach*, 09CV1371, 2013 WL 5727409, at *8 (S.D. Cal., Oct. 22, 2013).  There is no facial challenge to the SBMC's development review provisions or to the application of the development review permit to Lot 10.  The SBMC details the projects that require development review permits and Plaintiffs make no claim that their project did not require a development review permit.  *See id.*

The decision whether to grant a development review permit under the SBMC, and in particular under SBMC § 17.68.040.F, is a "form[] of state action, [] which by [its] nature involve[s] discretionary decision making based on . . . subjective, individualized assessments." *Engquist*, 553 U.S. at 603.  The SBMC provides particular guidelines for subjective, individualized assessments, on which the City Council members base the decision whether to grant a development review permit.  SBMC § 17.68.040F requires city officials to make assessments, such as whether the development is "designed in a manner compatible with and . . . complementary to existing and potential development in the immediate vicinity of the project site" and whether the "[b]uildings and structures" are "designed in a manner which visually and functionally enhances their intended use." (ECF No. 112 at 55).  "It is well settled that the state may legitimately exercise its police power to advance [a]esthetic values." *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 805 (1984); *see also Berman v. Parker*, 348 U.S.

26, 32–33 (1954).   In its October 22, 2013 order, this Court found that the "discretionary considerations" afforded the City Council in the SBMC were "based upon legitimate regulatory reasons." *Contasti*, 2013 WL 5727409, at *10 (also noting that "[t]he undisputed facts establish that the City Council made findings which relied upon valid regulatory concerns").

Like the city's decision in *Las Lomas Land Co.* to deny approval of the plaintiff's proposed development project, the City's decision in this case involved "numerous public policy considerations and the exercise of discretion based on [the] subjective, individualized determination[s]" set forth in the SBMC.   177 Cal. App. 4th at 860.   In contrast to the city's denial of the plaintiff's approach permit in *Gerhart*, where the city did not have "any documented process or guidance for the Commissioners to follow in deciding whether to grant an approach permit," the Solana Beach City Council members based their decision on the proper guidelines provided in the SBMC.   *See* Resolution 2007-125, ECF No. 112 at 23–24.   The City Council rejected Plaintiffs' project after it explicitly found that Plaintiffs' proposed development "does not comply with the . . . development criteria as set forth in [SBMC] Section 17.68.040F."   *See id.* at 23.   The City Council took into consideration the average lot site and the average total floor area of structures in the surrounding area and found that Plaintiffs' "proposed 4,387 square foot (3,987 gross square foot) residence is approximately 2,700 square feet larger than the average existing residences."   *Id.*   The City Council determined that "[t]he proposed single-family residence is designed in a manner that is incompatible with other nearby residences because it is not compatible with existing or potential future single family development."   *Id.*   The City Council concluded that "[t]he site layout and design of the proposed project do not visually and functionally enhance its intended use as a single-family residence because the bulk and scale of the proposed project is incompatible with nearby structures."   *Id.* at 23–24.

Plaintiffs contend that Defendant's alleged rational basis for denying Plaintiffs' permit is a pretext for Defendant's impermissible attempt to apply Ordinance 357 to

Plaintiffs' proposal.  The specific provisions of the SBMC and the findings of the City Council establish that the City Council was entitled to take into consideration "existing and potential development in the immediate vicinity of the project site," but that the City Council did not prematurely apply Ordinance 357 to Plaintiffs' proposed development.  SBMC § 17.68.040.F, ECF No. 112 at 55; *see Contasti*, 2013 WL 5727409, at *9.  The SBMC specifically directs the City Council to review each proposed development plan to determine whether the plan is designed in a manner compatible with "existing and potential development in the immediate vicinity of the project site." SBMC § 17.68.040.F, ECF No. 112 at 23.  Any "potential development" in the area will be subject to Ordinance 357.

Under the discretion afforded and the guidance provided the City Council in the SBMC in this case, the City Council's decision whether to grant a development review permit is "the antithesis of the simple issue presented in *Olech*." *Las Lomas Land Co.*, 177 Cal. App. 4th at 860.  The Ninth Circuit has held that "[t]he class-of-one doctrine does not apply to forms of state action that 'by their nature involve discretionary decision making based on . . . subjective, individualized assessments.'" *Towery*, 672 F.3d at 660 (quoting *Engquist*, 553 U.S. at 603).  The Court concludes that the City Council's decision to deny Plaintiff's development review permit by its nature "involve[d] discretionary decision making based on . . . subjective, individualized assessments," and therefore, cannot constitute an equal protection violation.  *Id.*

Procedural Due Process Claim

"To obtain relief on a procedural due process claim, the plaintiff must establish the existence of '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process.'" *Shanks v. Dressel*, 540 F.3d 1082, 1090 (9th Cir. 2008) (quoting *Portman v. County of Santa Clara*, 995 F.3d 898, 904 (9th Cir. 1993)); *see also Wedges/Ledges of California, Inc. v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir. 1994).  "A protected property interest is present where an individual has a reasonable expectation of entitlement deriving from

'existing rules or understandings that stem from an independent source such as state law.'" *Wedges/Ledges of California, Inc.*, 24 F.3d at 62 (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)).  This Court has already determined that Plaintiffs' substantive due process claim fails as a matter of law on the grounds that Plaintiffs do not have a protected property interest in the development review permit.  *See Contasti*, 2013 WL 5727409, at *10 (holding that Plaintiffs "have not established a protected property interest [in the development review permit] required to prevail on the claim for deprivation of substantive due process").  Because Plaintiffs do not have a protected property interest in the development review permit, Plaintiffs' procedural due process claim fails as a matter of law.

## CONCLUSION

IT IS HEREBY ORDERED that Defendant's motion in limine to preclude any evidence, testimony, or argument relating to violation of right to equal protection (ECF No. 106) is GRANTED.  Defendant's motion in limine to preclude evidence, testimony, or argument relating to violation of procedural due process (ECF No. 107) is GRANTED.  The Court has concluded that Plaintiffs do not have a protected property interest necessary to support the due process claim.  The Court has further concluded that the City's decision to deny the development review permit in this case cannot constitute an equal protection violation.  All pending motions are denied as moot.  The Clerk of the Court shall enter judgment for Defendant on both claims and close the case.

DATED:  January 6, 2014

*William Q. Hayes*

**WILLIAM Q. HAYES**
United States District Judge